# EXHIBIT 2

Defendant's Discovery Request

August 3, 2018

# J. W. CARNEY, JR.
## & Associates
### Attorneys at Law

J. W. CARNEY, JR.
REYNA M. RAMIREZ
CANDACE L. HODGE
DANIEL J. GAUDET

20 Park Plaza
Suite 1405
Boston, MA 02116
Tel: (617) 933-0350

JOANNA D. DOTOLO
*paralegal*

www.CARNEYdefense.com

August 3, 2018

**VIA EMAIL AND BY U.S. MAIL**

Anne Paruti
Assistant United States Attorney
U.S. Courthouse, Suite 9200
One Courthouse Way
Boston, MA 02210

      **RE:** *United States v. Alex Levin*
           No. 15-cr-10271-WGY

Dear Anne,

    It was a pleasure to see you in court this week. I write to inquire about the status of the discovery request sent to your office on April 18, 2018, and to request additional discovery. Please see the requests enumerated below and note that they are meant to supplement, not replace, the requests made on April 18th. We note that we have not yet received this discovery, and though you did respond via e-mail on May 23 to indicate that a response was forthcoming, one has not yet been received.

    If the United States is not in possession of any of the requested items, please indicate that in your response.

    1.  Any information regarding the JavaScript exploit(s) employed by the government in this case, sometimes referred to as "Magneto" or "Cornhusker," including the exploits' executables and source code; how the exploit was used to look at the defendant's Windows HOSTNAME and MAC addresses and send

those back to the FBI server, thereby exposing a de-anonymized IP address.

2. The source code for the "Placeholder Fingerprint for TOR Hidden Services."

3. Information regarding how web cookies were used to track a TOR browser user's activity on the internet.

4. Information regarding the government's exploits of the TOR "zero day vulnerability" of the Firefox/TOR browser bundle.

5. Information regarding the TOR exit nodes that the government maintained during the operation of the Playpen site, including the weeks leading up to and after that operation, any malicious nodes that were set up, including whether the government used an exit relay scanner.

6. The digital certificate the government used to monitor the web traffic and content to the Playpen site.

7. Information regarding the government's exploit of the CISCO Netflow software and whether agents or others introduced specific traffic perturbation on the FBI-controlled server.

8. The names of all agents, contractors or other personnel who assisted with maintaining and operating Playpen while it was under Government control.

9. Any evidence that the NIT misidentified a user or IP address as visiting the Playpen site when it in fact had not.

10. The total number of IP addresses and MAC IDs that were seized during the time the FBI was operating Playpen, and what studies were done to evaluate whether any of those addresses were false positives.

11. Correspondence between the government and Matt Edman, a former employee of the TOR project, regarding Operation Pacifier, the Playpen site, or specific de-anonymized TOR Network users.

12. Raw NIT result files which include the defendant's IP address(es).

13. The source of the collectable data items, including the original source of the data compiled by the NIT, identifying

which data was used to create information about the users targeted by the NIT.

    14.   EnCase or FTK EOI files for both of the defendant's seized computers.

    15.   List of IP addresses discovered via Operation Pacifier.

    16.   The affidavit accompanying subpoenas issued to Comcast, Verizon/FiOS or other Internet Service Providers in relation to the defendant.

    17.   List of other cover NIT IP collections that were happening at the same time as Operation Pacifier.

    18.   All the data used, the original source of the data used as well as the algorithm used, to create the unique NIT ID used to relate the NIT information to a single computer.

    19.   All the data items collectable by the NIT and the original source of each of those data items collected by the NIT.

    20.   The target URL a TOR user would have to enter into a TOR browser to get to the TOR Playpen server.

    21.   The defendant's Internet Service Provider logs.

    22.   Information regarding whether the government seized any of the onion routers that the defendant's alleged Playpen activity went through.

    If you believe that you have already provided any of these items, please let me know. Thank you for your assistance.

                                       Yours sincerely,

                                       J. W. Carney, Jr.

JWC/dg