UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| V. | ) ) | Crim. No. 15-cr-10271-WGY |
| ALEX LEVIN | ) ) ) | |

## DEFENDANT'S OBJECTION TO RESTITUTION

The defendant, Alex Levin, objects to the amount of restitution requested by the government. The government seeks restitution for two of the individuals that were depicted in the child pornography that the defendant was convicted of possessing: "Tara" and "Pia." The government seeks $18,136 for Tara and $5,000 for Pia. For the reasons that follow, the defendant objects to the requested amounts.

18 U.S.C. § 2259 requires courts to award restitution to victims of various enumerated federal offenses, including possession of child pornography. *Paroline v. United States*, 572 U.S. 434, 439 (2014). In *Paroline*, the Supreme Court set forth a methodology for setting restitution amounts in child pornpgraphy cases. The Court must "determine the amount of the victim's losses caused by the continuing traffic in the victim's images . . ., then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id.* at 460. Factors that the Court should consider include:

> [T]he number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

1

*Id.* Taking these factors into account, the burden of proof then falls on the government to establish the requested amount by preponderance of the evidence. 18 U.S.C. § 3664(e); *see also United States v. Darbasie*, 164 F. Supp. 3d 400, 405 (E.D.N.Y. 2016); *United States v. Kennedy*, 643 F.3d 1251, 1263 (9th Cir. 2011); *United States v. Aumais*, 656 F.3d 147, 152 (2d Cir. 2011). "Restitution orders should represent 'an application of law,' not 'a decisionmaker's caprice, . . . and the approach articulated above involves discretion and estimation." *Paroline*, *supra* at 462 (quotations omitted). The defendant addresses each of the victims in turn.

   a.  *Tara*

The government has informed the defendant that, according to a database maintained by DOJ, the average award to Tara pre-2019 was $1,805.00. This average includes 41 cases where the defendant was convicted solely of possession of child pornography, much like the defendant in this case.[1]

It is impossible for the Court to predict with any degree of certainty the number of future offenders likely to be charged with and convicted of possessing Tara's images. Moreover, the defendant did not reproduce, distribute, or play any role in creating Tara's images. He was convicted solely of possessing them.

The government has submitted little information support Tara's requested restitution. Nevertheless, Tara requests a significant amount of money. A federal judge sitting in the Southern District of Georgia recently considered a nearly identical restitution request in *United States v. Moody*, 2018 WL 3887506 (S.D. Ga. August 15, 2018). The defendant in Moody was convicted of a single count of receipt of child pornography, which included images of Tara. *Id.* at

---

[1] Since June 2019, this amount has increased to $4,184.00. The defendant submits that the figures reflected in the pre-2019 cases should be used since this case arose in 2015. Moreover, Congress passed a law in 2014 mandating that victims receive not less than $3,000 in restitution, but the prosecution concedes that this law is not retroactive to cases arising before 2014.

*1. Tara submitted a restitution request for $37,008.78. *Id.* at *8. The requested amount included $6,872.38 for counseling sessions from 2008-2010; $2,318.40 in mileage related to those counseling sessions; $800.00 in mileage for future counseling; and $2,688.00 for future insurance premiums.[2] *Id.* Tara also noted in her request that she had been reimbursed $18,872.38, though the source of reimbursement was not noted.[3] *Id.* The Court declined to award any restitution to Tara. *Id.* In so ruling, the Court noted that the amount Tara had already been reimbursed more than covered the aforementioned losses. *Id.* Moreover, the Court also found that while Tara requested unreimbursed losses in the amount of $22,400.00 due to relocating as a result of harassment by individuals who discovered where she lived, there was no causal connection between this harassment and the defendant. *Id.* Lastly, the Court recognized that Tara did not submit an expert report discussing the need for future counseling. *Id.*

       The Court in this case should adopt the reasoning in *Moody* and decline to award any restitution to Tara. Much like in *Moody*, there is no causal connection between Tara's unreimbursed losses and the defendant's conduct. Additionally, there is no evidence that the defendant distributed Tara's images, which could alter the analysis. *See Quignon*, *supra* at *3 (distinguishing *Moody* on the basis that by distributing Tara's images "[i]t is reasonable to conclude [the defendant's conduct] could contribute to precisely the type of harm described"). There is likewise still no forensic report detailing the need for future expenses. The government has also not established why this particular defendant should be responsible for the entirety of Tara's claimed outstanding losses. *See Paroline*, *supra* at 1725-26 (rejecting argument that every defendant should be responsible for the entirety of victim's general losses). Based on the information provided by the government, which appears to be identical to that submitted in

---

[2] These are the identical restitution amounts requested by Tara in the present case.
[3] The same reimbursement is noted in the request submitted in the present case.

*Moody*, the Court should not award restitution to Tara. If, however, the Court chooses to do so, the defendant submits that no more than $1,805.00, the purported average prior to June 2019, be awarded.

   b. *Pia*

The government has submitted additional information in support of its request for Pia, but has likewise failed to demonstrate why the defendant should have to pay the amount sought. The government has informed the defendant that Pia received on average $3,027.00 pre-June 2019, and that number has increased to $3,138.00 since then. It would, much like with Tara, be entirely speculative to try to predict how many future offenders will be convicted of possessing Pia's images or the broader number of offenders involved. The defendant again did not reproduce, distribute, or create Pia's images. It is also unclear how many images of Pia that the defendant possessed; he was convicted of possessing 13 videos and one still image, of which the government has not identified how many depicted Pia.

Unlike with Tara, the defendant does not dispute that Pia's request for restitution is supported and warrants some award. However, the defendant should not be required to pay a sum of restitution greater than the average award to Pia when there are no aggravating circumstances in his case. The defendant was convicted solely of possessing Pia's images. He did not distribute or share them. There are simply no facts in this case that warrant ordering a greater sum of restitution than the average amount that has been ordered by other Courts throughout the country. The defendant submits that the Court order restitution to Pia in the amount of $3,027.00.

WHEREFORE, the defendant submits that the Court order no restitution with regard to Tara and award $3,027.00 to Pia.

ALEX LEVIN<br>
By his attorneys,<br>
CARNEY & ASSOCIATES

*J. W. Carney, Jr.*

J. W. Carney, Jr.
B.B.O. # 074760

*Daniel J. Gaudet*

Daniel J. Gaudet
B.B.O. # 688120

20 Park Plaza, Suite 1405
Boston, MA 02116
617-933-0350
DGaudet@CARNEYdefense.com

November 5, 2019

## Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

*Daniel J. Gaudet*

Daniel J. Gaudet

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>V. )<br>)<br>ALEX LEVIN )<br>) | Crim. No. 15-cr-10271-WGY |

### AFFIDAVIT SUPPORTING DEFENDANT'S OBJECTION TO RESTITUTION

I, J. W. Carney, Jr., state that the facts contained in the attached objection are true to the best of my information and belief.

Signed under the penalties of perjury.

*J. W. Carney, Jr.*
J. W. Carney, Jr.

November 5, 2019