1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3                               No. 1:15-cr-10271-WGY

4

5

6    UNITED STATES OF AMERICA

7

8    vs.

9

10   ALEX LEVIN

11

12                        * * * * * * * * *

13

14

                         For Jury Trial Before:
15                       Judge William G. Young

16

17

                         United States District Court
18                       District of Massachusetts (Boston.)
                         One Courthouse Way
19                       Boston, Massachusetts 02210
                         Monday, May 20, 2019
20

21                        * * * * * * * *

22

                    REPORTER: RICHARD H. ROMANOW, RPR
23                       Official Court Reporter
                       United States District Court
24       One Courthouse Way, Room 5510, Boston, MA 02210
                         bulldog@richromanow.com
25

1                    A P P E A R A N C E S

2


3   ANNE PARUTI, ESQ.
        United States Attorney's Office
4       One Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
5       (617) 748-3310
        E-mail: Anne.paruti.lohnes@usdoj.gov
6       For the United States of America


7


8   J.W. CARNEY, JR., ESQ.
    DANIEL J. GAUDET, ESQ.
9       J.W. Carney, Jr. & Associates
        20 Park Plaza, Suite 1405
10      Boston, Massachusetts 02116
        (617) 933-0350
11      Email: jcarney@carneydefense.com
        for the defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3    PRELIMINARY MATTERS............................    4

4    JURY SELECTION................................   17

5

6

7

8                        E X H I B I T S

9                        (None marked.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    (Begins, 9:15 a.m.)
2              THE CLERK:  Now hearing Criminal Matter
3      15-10271, the United States versus Alex Levin.
4              THE COURT:  Good morning counsel.  We will get
5      jurors, I think, just as soon as they are organized
6      downstairs, there are enough jurors that we will get a
7      venire.  And since I'm the one who greets the jurors,
8      that's what the Jury Commissioner told me.
9          Now I understand there's some preliminary matters
10     and there's one question that I want to ask.  Let's see
11     if we can't resolve those.
12         Mr. Carney, what do you think remains unresolved?
13             MR. CARNEY:  The defendant has filed a motion
14     to exclude evidence based on late disclosure and a
15     supplemental motion to do the same thing.
16             THE COURT:  Right, I've looked at that.  The
17     government has not filed a response, but I understand
18     from Ms. Gaudet that you wish to make a response, and so
19     I'll hear the government very briefly.
20             MR. CARNEY:  May I be heard also, please?
21             THE COURT:  You may be, but let's hear the
22     government.
23             MS. PARUTI:  Thank you, your Honor.
24         The defendant has pointed to certain disclosures
25     that the government made leading up to trial.  There are
```

1    a couple of points that I would like to, without

2    belaboring it, just, um, perhaps correct.  One thing

3    that I think is very important here is that this was a

4    case where there actually was no scheduling order.  I

5    personally came into the case after it had already

6    been -- either after it had been decided by the appeals

7    court or while that litigation was still ongoing.  In

8    the time leading up to the trial, I actually was working

9    on another case with Mr. Carney and --

10              THE COURT:  No, but, in essence, you agree

11   that the disclosures haven't been made?

12              MS. PARUTI:  Yes, I agree that I provided

13   information that I intend to use at trial to counsel,

14   um, last week.  I can inform the Court -- which I think

15   informs the Court about the situation surrounding that

16   set of circumstances that I had been proceeding on,

17   misunderstanding that this was going to be a plea.  And

18   I shouldn't have relied on that misunderstanding, I

19   discussed that with Mr. Carney, and --

20              THE COURT:  Forgive me for a second time

21   interrupting, but respectfully all that's beside the

22   point, we are where we are and I must resolve this

23   issue.  And now perhaps it's time to speak to -- to hear

24   from Mr. Carney.

25              Look, Mr. Carney, I'm not going to exclude this

1    evidence.  I -- having read your motion, I'm not really

2    clear what prejudice this has caused you, but if it

3    appeared that there was some sort of genuine prejudice,

4    um, I perhaps would be required to grant a continuance.

5    So I'm not excluding probative evidence.  And maybe the

6    way to back it is, do you want a continuance?

7                    MR. CARNEY:  No, your Honor.

8                    THE COURT:  All right.

9                    MR. CARNEY:  All right.  I gave Ms. Gaudet a

10   folder that I would like to have marked as an exhibit

11   for purposes of the hearing on this motion.

12                   THE COURT:  She gave me the folder and I will

13   mark it A for, um -- does Ms. Paruti know what's in it?

14                   MR. CARNEY:  I've given her a copy.

15                   THE COURT:  Right, then we'll mark this A for,

16   um -- and it is part of the record of this hearing.  You

17   will understand that I haven't gone through this yet.

18                   MR. CARNEY:  I would like you, your Honor

19   please, to just glance at the discovery we received this

20   week.

21                   THE COURT:  All right.  (Looks.)  All right.

22   Now I'll hear you.

23                   MR. CARNEY:  That is indecipherable evidence

24   to a lay person, page after page of documents with

25   numbers, um, and no description of what's involved, and

1    we just can't digest that type of information when we

2    receive it either 6 or 3 days before the trial.

3            THE COURT:  Let me see if I understand.  Thank

4    you.  I follow that.  Certainly I can't digest it.  It's

5    not intelligible to me.

6        What is it, Ms. Paruti?

7            MS. PARUTI:  So I provided it to counsel, um

8    -- when I returned to the state on Monday, um, I met

9    with the forensic examiner, I had him take screen shots

10   of his view of the evidence as he was able to view it

11   through his forensic tool.  That's a large portion of

12   what counsel, in his motion, what he has handed over to

13   you today has said is indecipherable.

14           THE COURT:  Well maybe I'm not understanding

15   something and so let me explain my understanding and you

16   correct me.

17           MS. PARUTI:  Sure.

18           THE COURT:  I'm of course well aware of the

19   original motion to suppress, this Court's ruling, the

20   decision of the Court of Appeals, so those matters are

21   already decided and we're now ready for a trial, because

22   it is decided that the warrant that led the -- the

23   warrant is fine, and when the warrant was executed,

24   whatever was found was found and the government is going

25   to make its case based on that.

1          I guess I'm not clear what -- why do you need a

2    forensic examiner, because you're going to like trace

3    into the dark web and out, something like that?

4          MS. PARUTI:  No, much different, your Honor.

5    There was an agent -- well he's really performing more

6    as a fact witness frankly, so the government expects two

7    witnesses, one who was the agent who interviewed

8    Mr. Levin on the scene and then one is the agent who

9    looked through the computer once it was back in the lab.

10         THE COURT:  Looked through his computer,

11   Levin's computer?

12         MS. PARUTI:  Correct, Mr. Levin's computer.

13   And so he's testifying as to the files that he found on

14   his computer where he found them.  That's the evidence

15   that -- and I made before trial -- made known to

16   Mr. Gaudet, and I believe to Mr. Carney, that I did not

17   intend to go into any details or introduce any evidence

18   about that network investigative technique that was the

19   subject of litigation and which frankly is much more

20   complicated, um, and I think confusing.

21         THE COURT:  So this witness we're talking

22   about that pertains to these files and these apparent

23   screen shots --

24         MS. PARUTI:  Correct.

25         THE COURT:  -- they get Levin's computer and

```
 1   your second witness sits there with the computer and

 2   looks at it -- but he's more skilled than that, he can

 3   go to the various files, open them, and see what they,

 4   um, what is there on the file at the time they have

 5   seized the computer at Levin's place of residence?  And

 6   of course you want that because you're proving

 7   possession, you say?

 8             MS. PARUTI:  Correct.

 9             THE COURT:  So you -- which of these things --

10   I've been given a folder here, which I take is an

11   exhibit book, um, so some of these you're seeking to

12   introduce in evidence?

13             MS. PARUTI:  I am.

14             THE COURT:  All right.  All of them?

15             MS. PARUTI:  So I'm seeking to --

16             THE COURT:  Well I guess I can tell by opening

17   the book here.

18             MS. PARUTI:  Is that the exhibit book that you

19   have there?

20             THE COURT:  Yes.  So there's pictures -- yes,

21   so some of them, I see a Registry report, then -- and

22   then I -- actually this Registry report goes on for page

23   after page and includes a fair amount of this, um --

24   well I take that back, you've actually broken it down.

25   So various of these documents you do want to introduce
```

1   in evidence?

2           MS. PARUTI:  Correct.  So there's a handful of

3   screen shots which just show where the child pornography

4   was, which is really more of a -- frankly a visual aid,

5   I mean the witness can testify to that.  And frankly

6   when I spoke with Mr. Gaudet, um -- and as the Court

7   knows, you know we had our final pretrial hearing on the

8   14th, um, I spoke with both Mr. Carney and Mr. Gaudet at

9   that point, um, offered to make more evidence available,

10  or the child pornography available to them, again they

11  declined.  They didn't raise any issues with the late

12  disclosure until that motion was filed.  And then --

13          THE COURT:  I understand.  Let me get back to

14  that.

15          Mr. Carney, I don't give advisory opinions, but I

16  can't understand any of this that she purports to or she

17  says she want to introduce evidence and, um, none of it

18  will get introduced in evidence until this witness, who

19  has performed the examination, has explained it.  So if

20  the witness explains it and explains what it is and how

21  you look at a computer to find these files, um, that

22  doesn't seem to be an exceptional thing, and on a proper

23  foundation, assuming that it's probative, I would admit

24  it in evidence.

25          Now, where is the prejudice since you get a chance

1    to, um, examine -- cross-examine the witness as to each

2    step that he took?

3              MR. CARNEY:  This is like a case with a

4    witness who speaks a foreign language that I do not

5    speak, that's the foreign language that the expert

6    speaks, I've got to have that translated and explained

7    to me and checked by someone to confirm that the expert

8    knows what he's talking about.

9              THE COURT:  Well let's -- let's again talk

10   practicalities here.

11             MR. CARNEY:  Look, may I address the Court on

12   practicalities?  The government has possessed this

13   computer since 2000 and --

14             THE COURT:  But you don't want a continuance

15   here, so -- or at least that's what you've said, and

16   that's why I want to say something about practicalities.

17   I've got today, tomorrow, and Wednesday, then, as I've

18   told you, I'm giving these people, and you, off till the

19   following Wednesday, so you've got a week in there to

20   have anyone check anything, and then we'll finish up

21   with this case.

22       I'm not hearing -- you knew they were going to

23   have a computer fellow to testify.  I'm not --

24             MR. CARNEY:  Until this week, your Honor --

25             THE COURT:  Go ahead.

1           MR. CARNEY:  Until this week the government

2    provided notice that they had obtained 7 video files and

3    1 photograph from my client's computer.  Up until we

4    received evidence, it came in at 10:31 on a Monday

5    night, we didn't look at it before the pretrial

6    conference the following day, and when we did look at

7    it, it was, as I say, it was in a completely foreign

8    language, and we were informed by the prosecutor that

9    there is much more evidence of child pornography that it

10   wants to introduce than the 7 videos and 1 photograph

11   that we were told about.  Those 7 videos and photograph

12   is enough, in and of itself, if believed by the jury,

13   um, to convict the defendant and we've prepared to try

14   the case on that basis.  But now we've got all of this

15   other discovery, which they should have produced not

16   months ago, but years ago --

17           THE COURT:  All right.

18           MR. CARNEY:  -- years ago, your Honor.  It's

19   not 21-day discovery, it's not *Jencks* discovery, it's

20   the result of their, um, looking at the defendant's

21   computer.  And to wait until one week before the trial

22   to do this -- you know do all of this searching and

23   coming up with all the rest of this stuff, um, I just

24   don't have time to look at it, your Honor.

25           THE COURT:  What, Ms. Paruti -- I think maybe

1    we're getting to the nub now.  Have you expanded the

2    universe of evidence, actual video evidence or still

3    photographs that you wish to put before the jury?

4    Recognizing that the enhancements will be tried to the

5    court and at another time, so I'm not dealing with that,

6    I'm dealing with my jury case.  Can you try the case

7    adequately on what has been timely disclosed?

8              MS. PARUTI:  The -- so, your Honor, to answer

9    that, what has been on the computer has not changed.  To

10   my understanding there's never been an exhibit list or

11   any -- prior to leading up to trial now, wherein the

12   government indicated exactly what files from the

13   computer it was going to introduce.  I'll note that

14   Mr. Nicholls had been given basically free range of the

15   items on multiple occasions --

16             THE COURT:  Well he says -- but respond to

17   what he's just -- Mr. Carney's just asserted to the

18   court, 6 videos and a still photograph.

19             MR. CARNEY:  7, your Honor.

20             THE COURT:  7 videos and a still photograph.

21             MS. PARUTI:  My understanding was that there

22   were 13 videos, but I don't have that information as far

23   as the disclosure to him, because again we don't

24   provide -- when we provide child pornography exhibits,

25   the defendant's counsel and expert has to come to the

1    facility to view what's there and --

2              THE COURT:  No, but as a practical matter,

3    they seem very clear as to what the 7 are, can you try

4    the case on the 7 and the stills?

5              MS. PARUTI:  I don't think that I should be

6    required to for all the reasons that the Court has

7    already outlined, given what the prejudice is here, um,

8    or the lack of it, and how it can be easily remedied

9    with the solution that you've already suggested.  It's

10   not -- so to answer your question specifically, there's

11   never been any provision of a list of five names that

12   the government intended to introduce at trial.

13             THE COURT:  Well, you know, um, and maybe this

14   is my fault -- what you're suggesting is it may be my

15   fault.  I know how to remedy it.  I know how to issue

16   detailed pretrial orders that will require certain

17   things.  I'm not so sure you want that as an

18   institutional matter.

19             Suppose we do it like this.  Suppose you put on

20   the 7 -- or you put in -- we start with the 7 videos and

21   the still, and, um, then, once we've done that, we'll

22   see whether I will let you go further, because under

23   403, I may simply say it's redundant given this

24   background.  Certainly the government is entitled to

25   prove its case, but where 7 and a still have been

```
 1    produced timely, and these others allegedly have not,
 2    um, it might be the better part of valor to -- and I'm
 3    not foreclosing it now, but I am saying let's see the 7
 4    and the still first and then we'll see where we are.
 5          All right, I think that takes care of it.  And
 6    that's the Court's ruling.
 7          All right.  Could counsel and Mr. Levine come to
 8    the sidebar.
 9
10              AT THE SIDEBAR
11          THE COURT:  I want you to correct me, so
12    please do.  "Levin"?
13          MR. CARNEY:  "Alex Levin."
14          THE COURT:  "Alex Levin."  Well I'll refer to
15    him as "Mr. Levin."
16          MR. CARNEY:  Thank you.
17          THE COURT:  I would do this in any case, but
18    you mentioned the possibility here of a plea.  He's
19    innocent and we're going to trial, but it's fair under
20    *Padilla vs. Kentucky* to ask you what you were offering
21    for a plea.  And I want to make sure everyone knows what
22    you did offer for a plea.
23          MS. PARUTI:  We have not had specific
24    discussions, which is what I was waiting for.  The
25    government, at this point, I would expect -- having not
```

```
 1    had any discussions and being where we are, would, um,
 2    would recommend no higher than the low end of the
 3    guidelines, as the Court found them at this point.
 4    Again that's without any further discussions with
 5    Mr. Carney.
 6               THE COURT:  As the Court will find them.
 7               MS. PARUTI:  Yes, will find them.
 8               THE COURT:  Thank you.  All right.  Then I
 9    just want it on the record.
10         You've heard that, Mr. Carney?
11               MR. CARNEY:  Yes, your Honor.
12               THE COURT:  And I have every confidence that
13    you've properly advised your client, so that's fine.
14               MR. CARNEY:  Thank you, your Honor.
15               THE COURT:  So now I'm going to recess.  We'll
16    get the jury and we'll impanel and get going.  We'll
17    recess.
18
19               (In open court.)
20               THE COURT:  As I said we were to going to
21    recess, but I'm mistaken.
22         The witness list provided by the government is
23    sufficient to inform the jury, Mr. Carney?
24               MR. CARNEY:  Yes, your Honor.
25               THE COURT:  Thank you.
```

```
 1            Thank you, now we'll recess.

 2                 (Recess, 9:45 a.m.)

 3                 (Resumed, jury venire enters, 10:15 a.m.)

 4            THE CLERK:  Criminal matter 15-10271, the

 5    United States of America versus Alex Levin.

 6            THE COURT:  Good morning again, ladies and

 7    gentlemen, you've met me because I welcomed you all.

 8    Now you're called to a specific courtroom for a possible

 9    empanelment on a specific case.  If you were listening

10    to Ms. Gaudet when she read the name of the case, you

11    will see that this is a so-called "criminal case,"

12    that's a case where the government, the United States,

13    has charged an individual, a man by the name of Alex

14    Levin, with a particular crime, a crime with which he is

15    charged is possession of child pornography.

16            He is innocent of that crime.  He is an innocent

17    man.  He can only be convicted if the jury that we pick,

18    after due consideration of all the evidence, in a fair

19    and impartial manner, comes unanimously to believe,

20    beyond a reasonable doubt, that he is guilty of that

21    crime.

22            Now here's what we're going to do.  I'm going to

23    ask Ms. Gaudet to put you on oath and once you're on

24    oath I'm going to introduce these folks to you.  I'm

25    going to ask you some questions -- they're not terribly
```

```
 1    personal questions, but naturally I'll be asking, do you
 2    know any of these people, do you work with any of these
 3    people, are you involved with litigation with those
 4    people, do you have feelings about this particular
 5    alleged crime?  Things that will help to determine
 6    whether it's appropriate that you can be chosen as a
 7    judge, because that's what we're talking about here, the
 8    jurors who will be the judges of the facts in this case.
 9    Now -- and I'll tell you how long the case will go.  I
10    will explain things to you.
11        If an answer to any of my questions, you would
12    answer "Yes" or you think your answer would be "Yes,"
13    maybe it's "Yes," it could be "Yes," raise your hand.
14    Always err on the side of raising your hand, if you
15    think your answer might be "Yes."
16        Now when I'm done asking the questions, we'll have
17    everybody who raised their hands line up in this aisle
18    here and stop there by the railing, line up behind the
19    railing.  You hear about lawyers passing the bar?
20    There's actually a bar, that's it, and it's the
21    privilege of the lawyers to practice their profession up
22    in what we call "the well of the courtroom," where the
23    rug is darker here.  That's the symbolism.  It doesn't
24    mean they have to stay on that rug, but that's the
25    symbolism.  And so once you've lined up, and the lawyers
```

1    will come up by me, and I'll call you up one by one, and

2    then I'll ask some other questions just to see if it's

3    appropriate that you be picked as a juror in this

4    particular case.

5            Now if I excuse you, I don't want you thinking

6    that we think you can't be fair, we think you won't be a

7    good judge, it's just that for one or another particular

8    legal reason it's appropriate that you not sit on this

9    particular case.  And as you will see from all the

10   people who are down in the jury assembly area this

11   morning, you're not going anywhere, we're just sending

12   you back down there.  We'll send you out on another

13   case.  We have plenty.

14            (Laughter.)

15            Once I've asked my questions and I've interviewed

16   the people who've answered "Yes," I will call the venire

17   -- that's what this group of people that you are is

18   called, I will say "The venire is indifferent," and that

19   means we're ready to pick.  And then at random -- the

20   computer has already got you listed at random, we will

21   fill the box with 14 jurors -- and we'll start in the

22   second row, from the right to left, and then the first

23   row, from the right to left, and when we've done that

24   then I will have each person who has been picked -- and

25   we'll know your name because you're called by name, and

1   you don't have to stand up, you don't have to introduce

2   yourself, but I would like you to tell us just a few

3   words about where you work, what you do there, and if

4   you're married, could you tell us where your spouse

5   works and what he or she does.  That's so that the

6   lawyers -- and it's fair, so the lawyers get to know you

7   a little better.

8          Then, with that done, the lawyers and I, we gather

9   over here and we huddle and some more of you may be

10  excused.  Again that's no reflection on you, it doesn't

11  mean there's anything wrong with you, it just is

12  evidence of how meticulously careful we are in picking

13  those jurors, those individuals who are going to be the

14  judges of the facts in this case.  And when we're done

15  doing that, we're ready to go, this case is all ready to

16  go, and we'll take a break, a short break, and we'll get

17  the case underway.

18          Very well.  Let's swear the venire.

19          THE CLERK:  Jurors please stand, raise your

20  right hand, and repeat after me saying your own name

21  after the pronoun "I."

22  "I do solemnly swear to answer truthfully

23  questions put to me concerning my qualifications to sit

24  as a juror in this case."

25          (Repeated by all.)

1          THE CLERK:  You can be seated.

2          THE COURT:  Now let me start by introducing to

3     you the people who will be involved in this case and

4     we'll start with, um -- and when I call your name, if

5     you wouldn't stand up and face the jury.

6          Anne Paruti.  She is an Assistant United States

7     Attorney and she'll represent the government.  She'll be

8     assisted in the case -- and I believe that's her sitting

9     back there, by Paralegal Melissa Johnson.  Thank you.

10    Please be seated.

11          (Are seated.)

12          Mr. Alex Levin is here, and I'll ask you to stand,

13    and his attorneys are attorneys J. Carney and Daniel

14    Gaudet.  Would you please stand.  And if you'd face the

15    jury.  And please be seated.

16          (Are seated.)

17          Now my first question naturally is, um, before we

18    even get to these people, have any of you heard, read,

19    or seen anything at all about this case prior to today?

20    I don't suggest that you would.  I don't know of

21    anything being in the media about this case.  But the

22    formal name is ***United States vs. Alex Levin***.  Anyone

23    heard, read, or seen anything about the case?

24          (No hands.)

25          Has there been any scuttlebutt about this case,

```
 1   anyone approached you talking about this case?  Any talk
 2   about this case downstairs this morning prior to your
 3   coming up here?
 4        (No hands.)
 5        Have any of you made up your minds about this case
 6   before we've gotten into it at all?  Anybody?
 7        (Hands raised.)
 8        Thank you.  Have any of you ever, um, been
 9   involved in any -- well, first of all, do you know any
10   of these people that I just introduced you to, are you
11   familiar with any of them?
12        (Hands raised.)
13        Thank you.  Ms. Paruti.  Mr. Carney.  Mr. Gaudet.
14   Mr. Levin.  Excuse me, "Levin," that's how his name is
15   pronounced.  One person is.
16        (Hand raised.)
17        Though you may not personally know them, have you
18   ever, or any member of your immediate family, have you
19   ever been employed or your family ever been employed in
20   any respect by any of these individuals, acting as
21   individuals, Ms. Paruti, Mr. Carney, Mr. Gaudet,
22   Mr. Levin, or by their offices, the offices of the
23   United States Attorney here in Massachusetts, the, um --
24   Mr. Carney and Mr. Gaudet, their law office, or have you
25   been employed by Mr. Levin?
```

```
 1            (No hands.)
 2            Are any of you sensible of any bias or prejudice
 3    whatsoever with respect to this case?
 4            (Hands raised.)
 5            Thank you.  Let's drill down on that a little bit.
 6    This case may involve your having to look at pictures or
 7    videos of children who are involved in graphic sexual
 8    acts.  Would that so disturb you that you don't think
 9    you could fairly and impartially evaluate the evidence
10    as you are required to and as I will explain the law.
11    Anyone?
12            (Hands raised.)
13            Thank you.  All right.  My questions -- let me
14    read to you the witnesses in this case.
15            They are Michael Sullivan.  Mr. Sullivan is
16    employed by the Boston Police Department.  And, um,
17    Clayton Phelps.  Is his last name "Phelps"?  Yes,
18    Clayton Phelps.  Mr. Phelps is employed by the Federal
19    Bureau of Investigation.  And Joseph Nicholls.  And
20    Mr. Nicholls is from Gloucester.
21            Do any of you, or any member of your family, so
22    far as you are aware, are you related to or acquainted
23    with any of those individuals?
24            (No hands.)
25            Because two of them are law enforcement officers,
```

1      let me ask you whether anybody in your immediate

2      family -- and by "immediate family" I mean your husband,

3      your wife, your mother, your father, your brother, your

4      sister, your son, or your daughter, is anyone in your

5      immediate family, are they now or have they ever in the

6      past been employed by a law enforcement agency, either

7      state or federal -- the state Department of Corrections,

8      the state Attorney General's Office, a law enforcement

9      agency?  Anybody?

10             (Hands raised.)

11             Thank you.  Do any of you know any reason why you

12     do not stand indifferent in this case?  And when I say

13     "stand indifferent," I'm trying to search out any

14     feelings that you might have about this case, about

15     cases of this sort, about the Office of the United

16     States Attorney, the prosecutors of cases of this sort,

17     feelings about attorneys who defend people who are

18     accused of crime, accused of crimes of this sort.  In

19     short I'm trying to find out if there's anything I

20     should know about your feelings about this case going

21     in?

22             (Hands raised.)

23             One thing I didn't ask and I should go back and

24     pick it up.  Have any of you ever been involved -- or

25     anyone in your family ever been involved in litigation?

1    And it doesn't have to be criminal litigation, but

2    litigation that involved the Office of the United States

3    Attorney or involved Mr. Carney or Mr. Gaudet acting

4    at -- Mr. Gaudet, acting as attorneys or acting

5    individually, or involved Mr. Levin.  Anyone ever been

6    in litigation with him either as a witness or as a

7    party?

8         (Hands raised.)

9         Thank you.  All right.  Now let me tell you now

10   the schedule in this case.  I cannot guarantee the

11   schedule in a case such as this, but, um, you see that

12   there aren't too many witnesses in this case, though

13   I'm -- I've got a legal issue that I'm pondering.  But

14   here's the schedule.

15        We're going to go today, tomorrow, and Wednesday

16   in this case.  Um, perhaps it will be done by then and

17   we will give it to the jury.  That's a relatively short

18   case.  But perhaps we won't.  And no one is crowded --

19   no one will be crowded here.  And there's two issues

20   that I am aware of and sensitive to.

21        One is a legal issue, that's my duty, but there's

22   a legal issue that has come up in this case that I may

23   have to wrestle with.  But also we're butting up against

24   a significant holiday, Memorial Day, and people travel,

25   so my practice has been not to sit on the day before and

1   the day after -- and I'm not going to sit on Thursday

2   either because more people are on the road then and I

3   may be pinned down with this legal issue.  It's not your

4   concern, but a fact.  And so if the case doesn't come to

5   you on Wednesday, we're going to go over a week to the

6   following Wednesday, and then we'll finish up.

7        Again, I do not bind the attorneys, I can't do

8   that under the Constitution, but my best judgment is

9   that this will take about 3 to 5 days.  But if we get to

10  5 days, we're into next week.

11       So having that schedule in mind -- but I'm not

12  focusing on that schedule, I'm going to ask my last and

13  most general question, and the general question, I want

14  to go back over all of the prior questions now that

15  you're thinking of it.

16       Based upon what I've said, what I've asked, what

17  I've explained about the case, do any of you know any

18  important reason why you ought not sit as a juror in

19  this case?

20       (Hands raised.)

21       All right.  Now would everybody who's raised their

22  hand, for any reason, would you line up in this aisle

23  here.  And I'll ask counsel to come up.

24

25                AT THE SIDEBAR

```
 1                    (First juror.)
 2               THE COURT:  We need to start with your name,
 3     sir.
 4               THE DEFENDANT:  David Taglieri.
 5               THE COURT:  Yes, Mr. Taglieri, you answered
 6     "Yes" to something?
 7               THE JUROR:  Yes.  My brother-in-law is
 8     actually a police officer.
 9               THE COURT:  All right.  Recognizing that fact,
10     and I guess it's the government that's going to call a
11     police officer and an FBI agent to testify, are you in
12     favor of their testimony just because they're in law
13     enforcement, are you going to lean towards them just
14     because they're in law enforcement?
15               THE JUROR:  No, I'm not biased.
16               THE COURT:  Are you hostile or skeptical of
17     them because they're law enforcement?
18               THE JUROR:  No.
19               THE COURT:  Do you really think you could be
20     fair, fair to the government and fair to Mr. Levin?
21               THE JUROR:  Yes.
22               THE COURT:  Then I'll ask you to stay.
23               (Juror leaves.)
24               MR. CARNEY:  Did we get his number?
25               THE CLERK:  He's Juror Number 21.
```

```
 1                 MR. CARNEY:  Thank you.

 2                 (Next juror.)

 3                 THE COURT:  Can we have your name, ma'am.

 4                 THE JUROR:  Jane McNamee.

 5                 THE COURT:  Yes, Ms. McNamee, you answered

 6      "Yes" to something?

 7                 THE JUROR:  You were discussing, you said "Who

 8      finds this intolerable?"

 9                 THE COURT:  Right.

10                 THE JUROR:  Well anything having to do with

11      the exploitation or abuse of children, and as a nurse

12      I've seen too much over the years.  So I find it really

13      sickens me.

14                 THE COURT:  And that may well be so, and of

15      course that's why Congress has passed the laws that

16      Congress has passed.  But the fact that the subject

17      matter is difficult for you -- first of all, it doesn't

18      mean that Mr. Levin has done anything, nor does it mean

19      that the trial is less fair.

20           But do I hear you, as a nurse and being exposed,

21      is there something about that, about watching videos,

22      that will prevent you from being fair, from holding the

23      government to its burden of proving beyond a reasonable

24      doubt?

25                 THE JUROR:  I mean I realize the importance of
```

1    me being objective.

2            THE COURT:  Really I'm asking you, and we

3    frequently -- and this is an entirely different context,

4    it has nothing to do with this case, but we have drug

5    cases and people are, their families may have had some

6    experience with drugs, and that's very helpful, we have

7    laws against improper, um, possession of drugs.

8            THE JUROR:  Right.

9            THE COURT:  So this is a difficult context.

10           THE JUROR:  Yes.

11           THE COURT:  But you think -- and I'm going to

12   respect what you tell me, but you're telling me it's so

13   difficult for you that you don't think you can do it

14   fairly?

15           THE JUROR:  Um, no, I can be objective.  But I

16   raised my hand when you had asked -- it was like a jerk

17   reaction because I don't -- but I'm a professional nurse

18   and --

19           THE COURT:  Right, and these lawyers are going

20   to deal with it in a professional manner and I've made

21   rulings about how it will be displayed in the courtroom

22   where it is quiet and the like, but the actual data, if

23   such data comes in evidence -- and I'm the judge, I

24   don't know what evidence we have, but I've tried cases

25   like this.  So if such data is before you, it may well

```
 1    show, um, material as I've generally described it, and
 2    that's different than the requirements of the law, the
 3    requirements of the law are specific and I will explain
 4    them.
 5         I guess I'm saying that if you look at something
 6    and it's gross and disgusting, are you just going to
 7    forget about the requirements of the law and say
 8    "whoever had that is guilty"?
 9              THE JUROR:  No, sir, because through the
10    years, from working in the emergency room in many, you
11    know, inner-city hospitals, including Boston, um, I have
12    to treat each patient equally and I can't apply their --
13    I can't apply their alleged conduct to --
14              THE COURT:  Right, and --
15              THE JUROR:  -- to their treatment.
16              THE COURT:  Right, and that's how Mr. Levin
17    has to be treated here, the burden is on the government.
18    We'll ask you to stay.  Thank you.
19              (Juror leaves.)
20              MR. CARNEY:  May I have one moment, um, not
21    regarding you, your Honor, but to just speak to
22    Ms. Paruti for about 20 seconds?
23              THE COURT:  Yes.
24              (Pause.)
25              THE COURT:  I have another stipulation --
```

1   we're going to put that in.  He's here.

2               MS. PARUTI:  I understand.

3               THE COURT:  That's it.

4        Also, since we've taken a break here, my case

5   management ruling is not an opening for the defense to

6   suggest that the 7 videos and the 1 photograph are all

7   there is on his computer of that nature.  Any suggestion

8   along those lines would clearly open up to the

9   government putting in more evidence.  Indeed I will

10   allow the government to reopen it if we --

11               MR. CARNEY:  Certainly, your Honor.  What I

12   had asked her is whether she would accept a stipulation

13   that the photos and video are --

14               THE COURT:  I understand that.  And you can

15   think about that.

16               (Next juror.)

17               THE JUROR:  My name is Kevin McKeever.

18               THE COURT:  Yes, Mr. McKeever.

19               THE JUROR:  Um, it's happened in my family, so

20   I don't want to watch that.

21               THE COURT:  It has?

22               THE JUROR:  Yup.

23               THE COURT:  All right, we will excuse you on

24   this case.  Go back downstairs and we'll find a

25   different case for you.  Thank you.

```
 1                    (Juror leaves.)

 2                    THE CLERK:  Juror 13.

 3                    (Next juror.)

 4                    THE COURT:  Can we have your name, ma'am?

 5                    THE JUROR:  Marjorie Berger.

 6                    THE COURT:  Yes, Ms. Berger, you answered

 7     "Yes" to something?

 8                    THE JUROR:  Yes.  I was a professional teacher

 9     and I have dealt with children who were victims of

10     sexual abuse.  Also, a very close friend, she and her

11     son, were victims of sexual abuse.  So those experiences

12     are deeply entrenched in me and --

13                    THE COURT:  Let's -- and of course I so much

14     respect your life experience.

15                    THE JUROR:  Uh-huh.

16                    THE COURT:  That of course is why Congress has

17     passed the laws that it has and the government seeks to

18     enforce them here.

19                    THE JUROR:  Uh-huh.

20                    THE COURT:  That of course, at the same time

21     it doesn't suggest that Mr. Levin has done anything at

22     all?

23                    THE JUROR:  That's right.

24                    THE COURT:  And I guess what I'm getting at is

25     if we get into evidence -- if there is evidence of -- by
```

1   video or picture or something, of some graphic sexual

2   nature involving, um, it looks like a child --

3              THE JUROR:  Yes.

4              THE COURT:  -- you, and indeed many people,

5   most, I would imagine, would find that gross and

6   disgusting, but it doesn't mean that it fits the legal

7   definition.  So I guess -- and I'm pressing.  I will

8   teach the legal definition.

9       Do you think you can listen to me and apply it or

10  are you going to turn it off by -- that those

11  definitions will go out the window and if somehow the

12  video was associated with Mr. Levin, you'll just say

13  he's guilty?

14             THE JUROR:  (Pause.)  Yes, I'm sure I could be

15  objective to his innocence, but I'm just, um, as an

16  educator and somebody who spent my life with children,

17  that it's deep in my heart.

18             THE COURT:  All right.  It's also fair to say

19  here, and this in no way excuses anything, that the

20  possession of child pornography is a crime.

21             THE JUROR:  Yes.

22             THE COURT:  But it has to be an actual child

23  and that means that child was abused, that's what the

24  depiction is, but it's a different crime than a person

25  who engages in sexual abuse.  And you can understand

1    that?

2              THE JUROR:  Yes.

3              THE COURT:  Do you really think you can be

4    fair, fair to the government, and equally fair to

5    Mr. Levin?

6              THE JUROR:  Yes.

7              THE COURT:  Then I'll ask you to stay and

8    thank you.

9              THE JUROR:  Thank you.

10             THE CLERK:  Juror 3.

11             (Juror leaves.)

12             (Next juror.)

13             THE COURT:  Can we have your name, ma'am.

14             THE JUROR:  Katerina Chernykhivska.

15             THE COURT:  Yes, ma'am, you answered "Yes"?

16             THE JUROR:  Yeah.  Just sitting there I did

17   have a very strong emotional reaction, I guess,

18   especially your mentioning the prospect of working with

19   videos.  And I don't have a specific association, but it

20   made me very uncomfortable.  I can still feel my heart

21   racing.

22             THE COURT:  Yeah, you did just right to tell

23   us, and of course that's why we have laws against the

24   possession of child pornography.  But that doesn't

25   suggest that Mr. Levin has done anything wrong, because

1   he's really innocent.  We don't know who he is, we

2   haven't heard what evidence the government has.

3        So if you were to see such evidence, I guess my

4   concern is would you find it so disgusting, so upsetting

5   that you couldn't pay attention to the specific

6   definitions of child pornography that I must explain to

7   the jury and that they have to follow here.  So would

8   you ignore that and just say he's guilty and that's the

9   end of it?  Would you do that?

10       THE JUROR:  I think I would be able to keep

11   straight the definition, but, you know, where it's more

12   borderline, not -- even if it sounded borderline, I

13   think I would be more inclined to find him guilty just

14   because of my emotional reaction to it.

15       THE COURT:  And that's a fair statement.  But

16   in a criminal statement it isn't whether it's

17   borderline, in a criminal case the government has to

18   prove it beyond a reasonable doubt.  Any criminal case

19   has to be proved that way, an illegal gun case, a drug

20   case.  Any case.

21       Do you think you can hold the government, in this

22   type of case, to proof beyond a reasonable doubt?

23       THE JUROR:  Um, I'm not sure because I'm not

24   sure how I'll react to it.

25       THE COURT:  Thank you.  We'll excuse you from

```
 1    this case and send you back downstairs.

 2              THE CLERK:  Show that to --

 3              THE COURT:  Is that you?

 4              THE JUROR:  Yes, that's me.

 5              THE COURT:  Go back downstairs and we'll find

 6    you a different case.

 7              (Juror leaves.)

 8              THE CLERK:  Juror 19.

 9              (Next juror.)

10              THE COURT:  Yes, can we have your name?

11              THE JUROR:  Sure.  Gregory Bokar.

12              THE COURT:  Yes, Mr. Bokar, you answered "Yes"

13    to something?

14              THE JUROR:  Yes, to a few of your questions.

15        First of all, you said if, um, if there was a

16    scheduling problem and if this bleeds into next week,

17    I'm due to go to Tokyo on Tuesday morning.  So that's

18    the first question.

19        The second question is, um, I'm a lawyer as well

20    and I didn't catch the law firm, so I don't know if I've

21    worked with this firm in the past or worked with these

22    individuals.  I don't know if that's relevant, I'm just

23    pointing it out.

24              THE COURT:  I referred to them as individuals,

25    but Mr. Carney's the lead and he will state the name
```

```
 1    under which these two fellows practice.
 2              MR. CARNEY:  Carney & Associates.
 3              THE JUROR:  Okay, so, no, I haven't used that
 4    firm in the past.
 5         Your other question was, um, have I ever worked
 6    with U.S. Attorneys?  And the answer is "Yes."  I worked
 7    with the U.S. Attorney's Office for the Southern
 8    District of New York on an insider trading case, as well
 9    as the FBI.  So I'm aware of how the U.S. Attorney
10    operates as well as the FBI.
11              THE COURT:  Well let's work backwards, okay,
12    to the questions.
13              THE JUROR:  Okay.
14              THE COURT:  Does your work with the U.S.
15    Attorney's Office, does that in any way, um, cause you
16    to favor the prosecution in this case or do you think
17    you can make your determination based solely on the
18    evidence?
19              THE JUROR:  It's a tough question because I'm
20    very aware of how the U.S. Attorney's Office works, as
21    well as the FBI, in terms of reachings that the
22    government has.  That doesn't say I wouldn't be
23    impartial, it's just that I've worked closely with them,
24    so I just understand how it works.
25              THE COURT:  All right.  Now you doubtlessly
```

1   understand that the proof has to be proof beyond a

2   reasonable doubt?

3           THE JUROR:  I understand.

4           THE COURT:  And I'm hearing that you're

5   skeptical of them such that you would hold them to some

6   proof higher than proof beyond a reasonable doubt?

7           THE JUROR:  Again, I -- and I don't currently

8   work with the U.S. Attorney's Office, but this was a

9   case, it was an insider trading case coming up about

10   four years ago.  But again, you couple that with this

11   particular case and I do have some strong feelings with

12   regard to that I'm Catholic and with the sexual abuse

13   cases with the Catholic church and things like that, so

14   you couple those two together, I'm not saying I can't be

15   impartial, but I'm just sort of laying it out for your

16   Honor.

17           THE COURT:  And I appreciate it.  My

18   determination is based on do you think you can follow my

19   instructions -- and I will say you must follow them.

20   But here I really defer to you, do you think you can?

21           THE JUROR:  I think I can follow your

22   instructions.  My concern is based upon my prior

23   dealings.

24           THE COURT:  I understand.

25           THE JUROR:  And I'm wondering if that's going

```
 1   to -- but, yes, the answer to your question is
 2   "absolutely."  I just don't want to bring in any
 3   unfairness to the defendant because of some preconceived
 4   notions.
 5            THE COURT:  Yes, and that's why you're telling
 6   us this.
 7        Now this trip to Tokyo next week, that's for
 8   business?
 9            THE JUROR:  Yes.
10            THE COURT:  I need people from all walks of
11   life, so I'm going to ask you to stay.
12            THE JUROR:  Okay, thank you.
13            (Juror leaves.)
14            THE CLERK:  Number 5.
15            (Next juror.)
16            THE COURT:  Can we have your name, ma'am.
17            THE JUROR:  Stephanie Burrell.
18            THE COURT:  Yes, Ms. Burrell.
19            THE JUROR:  The main thing is once the case
20   was described, I immediately got sick because I have a
21   10-year-old daughter and a 14-year-old daughter, so I
22   felt immediately I couldn't be impartial.  And I don't
23   know if that's fair to him because (A) I wouldn't be
24   able to even look at the pictures.  And I work in law
25   apparently, but I just -- I just don't think I could
```

```
 1   even go through that trial, just seeing that.
 2              THE COURT:  So you think if the pictures, of
 3   the nature I spoke of, get in evidence, you're not going
 4   to be able to look at them and what's more you're going
 5   to --
 6              THE JUROR:  I can't even -- I'm sorry, I
 7   just --
 8              THE COURT:  No, that's not necessary.  In fact
 9   I thank you.  I want to know.
10              THE JUROR:  I just can't --
11              THE COURT:  You take this -- take this
12   downstairs and we'll find you a different kind of case.
13              THE JUROR:  Okay, thank you.
14              (Juror leaves.)
15              THE CLERK:  Number 6.
16              (Next juror.)
17              THE COURT:  Can we have your name, sir?
18              THE JUROR:  Frank Chmilarski.
19              THE COURT:  Yes, Mr. Chmilarski, you said
20   "Yes" to something?
21              THE JUROR:  No, I was just responding to your
22   question as to my name.
23              THE COURT:  Yes, thank you.  But you answered
24   one of my questions "Yes"?
25              THE JUROR:  Yes, I did.
```

```
1              THE COURT:  And which was that?
2              THE JUROR:  That I couldn't look at pictures
3    of children engaging in that type of stuff, I think it's
4    disgusting and vile.
5              THE COURT:  Of course it is, and it's
6    exploitative of the child, but that doesn't mean
7    Mr. Levin did it.
8         So when you -- if such evidence came in, are you
9    saying to me you would come back and conclude he's
10   guilty without regard to my instructions as to the law?
11             THE JUROR:  My question is, is that -- if
12   there were pictures of children engaged in sexual acts
13   shown in court, where did those pictures come from?
14             THE COURT:  Well it would be up to the
15   government to tell us, to introduce evidence, and the
16   government will be held to proof beyond a reasonable
17   doubt that Mr. Levin knowingly possessed that type of
18   material.  They've got to prove that beyond a reasonable
19   doubt.  Can you --
20             THE JUROR:  I don't think I could be
21   impartial.
22             THE COURT:  You don't think you could?  You
23   think if they get into that, you think he's guilty?
24             THE JUROR:  Yes.
25             THE COURT:  All right.  Okay, we'll send you
```

```
1    back downstairs, and you're not excused, but you'll go
2    out on another case.
3                 THE JUROR:  Yes.  Thank you.
4                 THE CLERK:  And please confirm that's your
5    name on the card?
6                 THE JUROR:  Yes.
7                 THE CLERK:  Okay, perfect.  Thank you.
8                 (Juror leaves.)
9                 THE CLERK:  Juror 18.
10                (Next juror.)
11                THE COURT:  Can we have your name, ma'am.
12                THE JUROR:  Jacqueline Buckner.
13                THE COURT:  Yes, Ms. Buckner.
14                THE JUROR:  Um, I've been a special education
15   teacher for 22 years and I'm just concerned how I might
16   react emotionally to the videos.
17                THE COURT:  And you've done just right to tell
18   us.  Because such materials evoke extreme emotions and
19   of course are -- well are some evidence of actual child
20   sexual abuse, that's why Congress prohibited this, you
21   can't have it, you can't send it.  But that's not saying
22   Mr. Levin did anything.  And I've got to explain to the
23   jury precisely what Congress has said a person cannot
24   possess.
25           So my concern is, do you think you can follow my
```

1    instructions even if personally you found, um, if there

2    are any -- and we don't yet know, but if there are such

3    depictions, that even if you found them disgusting, do

4    you think you could follow my instructions?

5              THE JUROR:  My physiological symptoms right

6    now, um, my heart is pounding, my legs are shaking, but

7    besides from that, I will do my best.

8              THE COURT:  Let's say -- let's say there are

9    some gross pictures -- and I'm being purposely vague

10   because I don't know what the evidence may be.  But

11   let's say there's gross and disgusting pictures.  There

12   are some -- and I don't know that there is, but there

13   are some that may or may not be somehow associated with

14   Mr. Levin, and I explain what child pornography is, and

15   if they're gross and disgusting, they fit within child

16   pornography.  Could you find that, if that's what those

17   pictures show, or would you say "since he has these

18   gross and disgusting pictures, he's guilty"?

19             THE JUROR:  I'm not sure I understand the

20   question.

21             THE COURT:  Well maybe it's not a good

22   question, and I'm trying my best.

23        When Congress passes a law, they explain in detail

24   what someone is forbidden to have, um -- let me try it a

25   different way.

1    Among adults there's a big pornography industry on

2    the internet and otherwise.  While there are some

3    limitations on it, there are very few limitations on it,

4    um, and we accept it as a society, or at least Congress

5    doesn't pass more laws.  But with children, and we talk

6    about children under 12 years old, Congress might have

7    passed specific laws because such depictions are

8    evidence of child sexual abuse and you cannot possess

9    them, you cannot send it and the like.  The government

10   makes such a charge here and I have to follow the

11   definitions that Congress has passed, the people's

12   representatives.  So I'll define what we mean by "child"

13   and I'll define what we mean by "child pornography" and

14   the like.

15       But suppose -- and I'm just supposing, because

16   I've seen no evidence, but that Mr. Levin is associated

17   with something, some pictures, and you find those

18   pictures, you personally find those pictures disgusting

19   and abhorrent, but they don't fit the definition.  Could

20   you acquit him as not guilty because they don't fit the

21   definition?

22            THE JUROR:  I don't know, I'd have to be in

23   that situation to make that determination.

24            THE COURT:  But you think it might be hard for

25   you?

```
1              THE JUROR:  It would be hard.  I don't think I
2     could with dedicating my career to protecting children,
3     so I think it would be very hard.
4              THE COURT:  You're absolutely right.  I will
5     excuse you on this case.  Go back downstairs and we'll
6     find a different case for you.
7              (Juror leaves.)
8              THE CLERK:  Juror 43.
9              THE JUROR:  Thank you.
10             (Next juror.)
11             THE COURT:  Can we have your name, sir.
12             THE JUROR:  Wei Lien.
13             THE COURT:  Yes, Mr. Lien.
14             THE JUROR:  I just wanted to ask, um, I am a
15    pediatrician, and while I would try to be impartial, but
16    I have some issues, a conflict and --
17             THE COURT:  What issues?
18             THE JUROR:  Um, well I would like to think I'm
19    impartial, but just taking care of kids, you know, all
20    the time, and seeing some pictures and that sort of
21    thing --
22             THE COURT:  I understand.  I understand.  But
23    as a professional -- I guess my concern is this.
24    Congress passes the law, the laws designed to deal with
25    what Congress and elected representatives think is a
```

```
1   social issue, a social evil, so the law has definitions.
2   I have to give the definitions, I have to follow the
3   definitions, and I will say to the jury, "These are the
4   definitions, and follow these."
5          So let's say -- and I'm making this up, because
6   I've seen no evidence discussed.  But let's say there
7   are some videos or pictures or something and somehow
8   Mr. Levin is associated with that, but it doesn't fit
9   the definition, you may find it disgusting and the like,
10  but that is not the legal standard, whether it's
11  disgusting, the legal standard is, is the child of such
12  and such an age or younger, that type of thing, and the
13  jury has to follow that.
14         Do you think you could do that?
15              THE JUROR:  Yes, I think so.
16              THE COURT:  Do you truly think you could be
17  fair, not just fair to the government, but equally fair
18  to Mr. Levin?
19              THE JUROR:  Yes, your Honor.
20              THE COURT:  Then we'll ask you to stay.  Thank
21  you.
22              (Juror leaves.)
23              THE CLERK:  Juror 27.
24              (Next juror.)
25              THE COURT:  Can we have your name, sir.
```

```
 1                THE JUROR:  Thomas Shewalter.

 2                THE COURT:  Yes, Mr. Shewalter.

 3                THE JUROR:  Well two things.

 4        One, I'm very sick and I went to Lahey Clinic on

 5   Friday and I have abdominal pains and I've had like four

 6   doses of Pitosin, um, and I'm just fading away.

 7            But the other thing is, is that I have a lot of

 8   customers who are District Attorneys and good friends,

 9   like Rachel Rollins and Zach Hafer and Brian Kelly, and

10   Donald Fabreau, and some are in the state court, and I

11   really don't know how I feel about it.

12                THE COURT:  Well, look, you are -- are you

13   sick now?

14                THE JUROR:  Well I just don't have any

15   strength.

16                THE COURT:  Um, I'm going to defer you.  We'll

17   have to call you back some other time, and they won't

18   defer you again.  But if you really feel lousy, we don't

19   make you stay here.

20                THE JUROR:  Okay.

21                THE COURT:  You're not excused simply because

22   you know these people, all of whom I know.

23                THE JUROR:  They're all really good people.

24                THE COURT:  They are really good people, and

25   they play roles in our system.  But I hope you feel
```

1  better.  You take this down and say you're deferred.

2          THE JUROR:  Thank you.

3          (Juror leaves.)

4          THE CLERK:  16.

5          (Next juror.)

6          THE COURT:  Can we have you name, ma'am.

7          THE JUROR:  Patricia O'Halloran.

8          THE COURT:  Yes, Ms. O'Halloran, you answered

9  "Yes," to what?

10         THE JUROR:  That is my name.  Oh, what the

11 questions are?  Oh, God.

12         THE COURT:  No, I must be more --

13         THE JUROR:  That's okay.

14         THE COURT:  No, it is okay.  In fact someone

15 else said exactly that, they gave me their name and I

16 said "Yes," and I said "Yes, to what?"  And they said

17 just what you said, "To my name."

18         (Laughs.)

19         THE COURT:  So what did you answer "Yes" to,

20 when I was asking the whole group?

21         THE JUROR:  There were actually two questions

22 that I responded "Yes" to.  The first one was, um, about

23 whether or not I would be able to, um, deal with a

24 graphic video of evidence.  Um, I would listen, but I

25 would really have a tough time viewing it.

```
 1              THE COURT:  And that's a very honest answer
 2      and I deeply appreciative of it.  The lawyers understand
 3      that very well and so in terms of evidence, they have
 4      agreed indeed, and I have ordered it, that if we get
 5      into any such evidence, it would be very brief, just in
 6      order that you'll only have to look to see the nature of
 7      the video.  It isn't going to go on for long minutes, in
 8      fact it's going to be very short indeed.
 9          And what's your answer to -- well what else did
10      you say as to --
11              THE JUROR:  There was another question about
12      whether, um, I wasn't personally involved in any
13      litigation with the, um --
14              THE COURT:  The U.S. Attorney.
15              THE JUROR:  The U.S. Attorney's office, but my
16      brother unfortunately was, and was convicted and is now
17      presently serving --
18              (Cries.)
19              THE COURT:  Yeah, and you did just right to
20      tell us.
21          Now given that experience --
22              THE JUROR:  Uh-huh.
23              THE COURT:  -- are you going to -- you have
24      every right to serve.  Are you going to hold that
25      against this prosecution and this prosecutor?
```

1              THE JUROR:  I would say that I would probably

2     be biased against the U.S. Attorney given the experience

3     that I and my brother went through.

4              THE COURT:  All right, we'll excuse you on a

5     criminal case.  If another judge is picking on a

6     criminal case, you're excused.

7              THE JUROR:  I understand.

8              THE COURT:  But we're picking on civil cases

9     too, so go back downstairs and say you're okay for civil

10    but not criminal.

11             THE JUROR:  Okay, thank you, your Honor.

12             (Juror leaves.)

13             THE CLERK:  Number 4.

14             (Next juror.)

15             THE COURT:  Can we have your name, ma'am.

16             THE JUROR:  Karen Chan.

17             THE COURT:  Yes, Ms. Chan, you answered "Yes"

18    to some of the questions?

19             THE JUROR:  Yes, the evidence of the graphic

20    material.

21        I have severe depression and post-traumatic stress

22    disorder and I feel that if I see that -- I am a

23    sufferer of abuse, so I don't want to see that, and for

24    the evidence -- I'm afraid I may have a panic attack or

25    just cannot answer unbiasedly about material such as

1   that.

2            THE COURT:  We will excuse you on this case.

3   Go back downstairs and we'll find a different type of

4   case for you.  You're not excused, you're excused on

5   this case.  Thank you.

6            THE JUROR:  Thank you.

7            (Juror leaves.)

8            THE CLERK:  Number 33.

9            (Next juror.)

10           THE COURT:  Can we have your name, ma'am.

11           THE JUROR:  Aurora Oh.

12           THE COURT:  Yes.

13           THE JUROR:  I have children, so I find the

14   idea of child pornography quite disgusting and so I --

15           THE COURT:  I'm sure.  Thank you for telling

16   us, and I'm sure that's so, and of course that's why we

17   have laws against it.

18           THE JUROR:  Yes.

19           THE COURT:  But that doesn't mean Mr. Levin is

20   involved in anything like that.

21           THE JUROR:  Uh-huh.

22           THE COURT:  I guess my concern is of course

23   you'd rather not, but here we've -- and the lawyers have

24   all cooperated on this.

25           If there's any such evidence and if you have to

1    look at it, it's going to be very short, just so you get

2    an idea of what a video or something depicts.

3         The law is detailed as to what the government has

4    to prove.  My concern is -- that if there was some

5    suggestion that he was involved with something you

6    considered gross or disgusting, but it didn't fit the

7    definition, that you would say, "Well, he's guilty

8    anyway."  Because the government has to prove it based

9    on the definitions as I explain it.

10        Do you think you can hold the government to the

11   burden of proof and the definitions as I explain them?

12            THE JUROR:  I'm not sure I can.  I understand,

13   but I feel very strongly towards these kind of things.

14   (Cries.)

15            THE COURT:  We all do, that's why --

16            THE JUROR:  Yeah, I know that, but I don't

17   think I could --

18            THE COURT:  So you think that because he was

19   charged with this, he's definitely guilty of it?

20            THE JUROR:  Yes.  Well, I mean, I would

21   definitely hear the evidence, but --

22            THE COURT:  But you're starting out thinking

23   he's probably guilty?

24            THE JUROR:  I just feel that way for cases

25   like this, um --

```
 1              THE COURT:  All right, you're excused on this
 2      case, go back downstairs, we'll find a different case
 3      for you.
 4              THE JUROR:  Okay, thank you.
 5              (Juror leaves.)
 6              THE CLERK:  Number 2.
 7              MR. CARNEY:  I'm going to try to have Levin --
 8              THE COURT:  Thank you.  I'll do the best I
 9      can.
10              (Juror leaves.)
11              THE COURT:  Can we have your name, ma'am.
12              THE JUROR:  My name is Nahian Chowdhury and
13      there's two questions I answered "Yes" to.
14          The first one is would I be comfortable looking at
15      pornographic pictures of children?  And that's not
16      something I would feel comfortable with.  I do have a
17      lot of children in my family and that's the first thing
18      that comes in my mind.  And the second one is whether I
19      would be biased towards this case because I have lots of
20      children in my family?  And that's the first thing I
21      would think of and I would say "Yes."
22          Now, would you be able to explain to me more about
23      what would be involved?
24              THE COURT:  Yes, that's a very good question.
25      I didn't ask would you be comfortable?
```

1              THE JUROR:  Okay.

2              THE COURT:  I phrased it the opposite.

3              THE JUROR:  Okay.

4              THE COURT:  Would you be so uncomfortable that

5      my instructions as to the law, and your consideration of

6      all the other information in the case, would in essence

7      go out the window and you'd say, "This is just so

8      disgusting, so he's guilty."

9          Is that you?

10             THE JUROR:  I would say so because again the

11     first thing I'll think of is my family.

12             THE COURT:  Yeah.  All right.  You're excused

13     in this case, go back downstairs and we'll find you a

14     different case.  Thank you.

15             THE JUROR:  Okay.

16             (Juror leaves.)

17             THE CLERK:  26.

18             (Next juror.)

19             THE JUROR:  My name is Jonathan Moll and I'm a

20     former General Counsel at Babson College and I'm now in

21     private practice, and I've referred cases to Mr. Carney

22     and had one case adverse to Mr. Carney.  Over my career

23     at Babson, um, I trained the Babson Police Department in

24     search and seizure issues and related issues.  I have to

25     be honest, I have a pro-law enforcement bent as a result

1    of my service at Babson and, um, I also -- my brother-

2    in-law is a former police officer.

3              THE COURT:  Well we've read the three

4    witnesses here, so -- and the government has the burden

5    here, so they'll go first, and two of their witnesses

6    are engaged in law enforcement.

7         So are you saying to me you're going to favor them

8    just because they're in law enforcement?

9              THE JUROR:  I would, I have that bent, your

10   Honor.

11             THE COURT:  All right, you're excused then and

12   we're impaneling other criminal cases, so you're excused

13   on criminal cases, but we're also picking on civil

14   cases.  So you tell them civil, yes, but no criminal.

15             THE JUROR:  Very good.

16             (Juror leaves.)

17             THE CLERK:  Number 48.

18             (Next juror.)

19             THE COURT:  Can we have your name, ma'am.

20             THE JUROR:  Kathryn Wallace.  I'm a nurse

21   attorney, um, I'm not practicing right now, but I have

22   my two health care coverage businesses, one deals with

23   mothers and babies and children, and my father's a state

24   trooper.

25             THE COURT:  All right, let's deal with that.

```
 1    The government bears the burden of proof here, so the
 2    government is going to call these two or three
 3    witnesses, and two are in law enforcement.
 4         Are you going to favor their testimony just
 5    because they're in law enforcement?
 6              THE JUROR:  Um -- (Pause.)  Yes.
 7              THE COURT:  Well once they tell you they're an
 8    FBI agent or "I'm a detective with the Boston Police
 9    Department," you're going to favor that testimony?
10              THE JUROR:  (Pause.)  Um, more than likely.
11              THE COURT:  All right, I'm not questioning
12    your answer, I'm pressing because I want an honest
13    answer.
14         You're excused on criminal cases, but we'll pick
15    you for civil, so go downstairs and tell them no
16    criminal, but civil.
17              THE JUROR:  Okay.  Thank you.
18              (Juror leaves.)
19              THE CLERK:  24.
20              (Next juror.)
21              THE COURT:  Can we have your name, ma'am.
22              THE JUROR:  Barbara Smail.
23              THE COURT:  Yes, Ms. Smail?
24              THE JUROR:  I have three girls, I just feel --
25    I home-school them, and the pictures, they're gross and
```

1    disgusting, and I don't know if I can deal with it.

2              THE COURT:  And of course that's why we have

3    laws against it, and that's precisely what Congress has

4    in mind when it passed the laws.  But that doesn't mean

5    of course that Mr. Levin is mixed up in anything like

6    this.

7              THE JUROR:  Right.  Yeah.

8              THE COURT:  So -- but I'm going to suppose --

9    let's suppose that we get into some pictures or

10   something in this case and they are gross and

11   disgusting, but when Congress passes a law, it passes

12   definitions about the age of the child, different

13   things.  Now I'm going to say that the jurors have to

14   follow what I tell them the law is, and I don't know

15   this because I haven't seen any evidence, but let's say

16   the way this case goes, it will go that way.

17             THE JUROR:  Um-hum.

18             THE COURT:  So can you follow my instructions,

19   or if you think the data is disgusting, will you say

20   he's guilty whatever we say is the law?  That's what I

21   want to know.

22             THE JUROR:  Um, I would try to do it.

23             THE COURT:  Uh-huh.  I'm sure you would.  But

24   do you think you could?

25             THE JUROR:  I think I could, I guess.

```
1              THE COURT:  Okay, then we'll ask you to stay.
2         Now you have to be equally fair to the government,
3    we're not just bending over backwards towards Mr. Levin.
4    So do you really think you could be fair to him and fair
5    to the government, do you think you can?
6              THE JUROR:  (Silence.)
7              THE COURT:  You're nodding?
8              THE JUROR:  Yes.
9              THE COURT:  Thank you.  We'll ask you to stay.
10             (Juror leaves.)
11             THE CLERK:  15.
12             (Next juror.)
13             THE COURT:  Could we have your name, please.
14             THE JUROR:  (Cries.)  Ms. Caitlin O'Neill.
15             THE COURT:  Yes, Ms. O'Neill, you answered
16   "Yes" to something?
17             THE JUROR:  When I was a minor I was -- I was
18   sexually abused.  Sorry.
19             THE COURT:  That's all right.  We will excuse
20   you from service on this case.  Just you're not excused
21   overall, but go down and tell them not on this case.
22   We'll find another case for you.
23             THE JUROR:  Thank you.
24             THE COURT:  You're excused on this case.
25             (Juror leaves.)
```

```
 1                  THE CLERK:  58.
 2                  (Next juror.)
 3                  THE COURT:  Hi.
 4                  THE JUROR:  I want to get close, but I happen
 5       to have the flu, so I'll stay here.
 6                  THE COURT:  That's quite all right.  Can we
 7       have your name, ma'am.
 8                  THE JUROR:  Sandra Rodsal.
 9                  THE COURT:  Yes, Ms. Rodsal, you answered
10       "Yes" to something?
11                  THE JUROR:  Yes, two things.  One, in 2000 my
12       brother was part of The Commonwealth against Eduardo
13       Escobar.  My brother got blinded and because the person
14       who did this to my brother was a minor, a lot of these
15       were not sent to the jury.  So ever since then my faith
16       in the system hasn't been the best.  And then 10 years
17       later we discovered that we were sexually abused
18       actually, um, mostly my brother, um, so this is way too
19       much for me right now.
20                  THE COURT:  All right, we'll excuse you from
21       service on this case.  Go downstairs.  You're excused on
22       this case.  We'll find another case for you.
23                  THE CLERK:  What's your name on the card?
24       That's your name on the card?
25                  THE JUROR:  Yes.
```

```
 1              THE CLERK:  Okay, thank you.  34.
 2              (Juror leaves.)
 3              (Next juror.)
 4              THE COURT:  Can we have your name, ma'am.
 5              THE JUROR:  Maryann Lacey.
 6              THE COURT:  Yes, Ms. Lacey.  You've answered
 7   "Yes" to some of the questions?
 8              THE JUROR:  What's that?
 9              THE COURT:  What questions did you answer
10   "Yes" to when I asked it?
11              THE JUROR:  Um, I won't be -- I would just not
12   be able to be nonbiased whatsoever based on -- it's just
13   pure evil.  It's just pure evil and I don't -- I can't
14   -- I can't even go there.  And I get very emotional
15   watching the movies, um --
16              THE COURT:  Well --
17              THE JUROR:  It's just pure evil.
18              (Cries.)
19              THE COURT:  But of course that's why Congress
20   has passed a law that it's passed, and that doesn't mean
21   that Mr. Levin is mixed up in anything.
22        Can you start him out innocent or do you think he
23   is really mixed up in something just because we're on
24   trial here?
25              THE JUROR:  He was found with possession.
```

```
1              THE COURT:  But that's what the trial is
2    about.  I don't know that.  Do you -- here today do you
3    think that's so?  Well that's what they charged him
4    with.
5              THE JUROR:  (Silence.)
6              THE COURT:  I mean are you coming in with that
7    on your mind, that he was found in possession?  Fairly?
8    You tell me.  I need to hear what you have to say.
9              THE JUROR:  (Silence.)  Yes, if anybody has
10   any suspicion of it, they've got to be at least
11   surrounded by it, okay?  So, yes.  Okay?
12             THE COURT:  All right, you're excused on this
13   case.  Go back downstairs and we'll find a different
14   case for you.
15             THE JUROR:  Okay.  Thank you.
16             (Juror leaves.)
17             THE CLERK:  41.
18             (Next juror.)
19             THE COURT:  Can we have your name, sir.
20             THE JUROR:  Last name, N-O-V-I-A, first name,
21   R-O-C-C-O.
22             THE COURT:  Yes, Mr. Novia.  You answered
23   "Yes" to something?
24             THE JUROR:  To two of them.  One, was am I
25   familiar with the case?  It sounds like it was familiar
```

```
 1    because also a friend of the family, an attorney, was
 2    accused of abusing a child a few years ago.
 3              THE COURT:  A what?  A friend just wants to --
 4    a friend of the family?
 5              THE JUROR:  It was a casual friend.
 6              THE COURT:  A casual friend was accused of
 7    this crime?
 8              THE JUROR:  Who was an attorney.
 9              THE COURT:  Who was an attorney, was accused
10    of this crime?
11              THE JUROR:  Yes.
12              THE COURT:  All right.  Then what else did you
13    answer "Yes" to?
14              THE JUROR:  When I think if I would be
15    actually impartial to whether or not this person is
16    guilty, the answer is "No."
17              THE COURT:  Why not?
18              THE JUROR:  Well just this kind of person, if
19    he's being brought in here, I would say he's guilty.
20              THE COURT:  You think that just because he's
21    here?
22              THE JUROR:  If the police did their job right.
23              THE COURT:  But of course that's why we're
24    having a trial.
25              THE JUROR:  I understand that.
```

```
 1              THE COURT:  All right, if that's how you feel.
 2   Go back downstairs, tell them I'm excusing you, no
 3   criminal trials for you, but we're picking in civil, so
 4   we'll get you a civil case.
 5              THE JUROR:  Thank you.
 6              (Juror leaves.)
 7              THE CLERK:  Number 52.
 8              (Next juror.)
 9              THE COURT:  Can we have your name, ma'am.
10              THE JUROR:  Melissa Cunningham.
11              THE COURT:  Yes, Ms. Cunningham.
12              THE JUROR:  Um, I cannot be impartial, Judge,
13   um, I was involved in a workplace sexual harassment case
14   myself and I'm not partial to any sexual harassment
15   cases.
16              THE COURT:  So with that experience, you think
17   you're --
18              THE JUROR:  Yes.  I won't be able to look at
19   the pictures.  I won't be able to do any of that.
20              THE COURT:  And you hold that against
21   Mr. Levin?
22              THE JUROR:  Anybody who is not -- not
23   particularly this person, but anybody.
24              THE COURT:  All right, you're excused from
25   this case, go back downstairs and we'll find a different
```

```
 1    case for you.

 2                  THE JUROR:  Uh-huh.

 3                  (Juror leaves.)

 4                  THE CLERK:  57.

 5                  (Next juror.)

 6                  THE COURT:  Can we have your name, sir.

 7                  THE JUROR:  Michael Griggs.

 8                  THE COURT:  Yes, Mr. Griggs.

 9                  THE JUROR:  I've participated in two child

10    molestation cases before and one was my younger brother.

11    So I don't have -- so I feel I would be biased.

12                  THE COURT:  I don't want to get into personal

13    things, but you participated how?

14                  THE JUROR:  Provided testimony.

15                  THE COURT:  You provided testimony.

16                  (Pause.)

17                  THE COURT:  So do you think that -- I mean you

18    don't understand -- do you think it bears on this?

19                  THE JUROR:  Yes, because despite what we felt

20    was overwhelming, it's never led to a trial or

21    conviction, and these people ended up doing it again in

22    both cases.  And one was a family member.

23                  THE COURT:  Okay, so you're -- I just want to

24    understand, what you're telling me is fine, but I want

25    to understand it.  You feel that the system is so, um,
```

1    tilted in favor of people accused, that they tend to get

2    off?

3            THE JUROR:  I do, it's a lot of "he said, she

4    said," when it comes right down to it.

5            THE COURT:  All right, you did just right to

6    tell us.  You're excused on this case.  But we'll send

7    you out on another case.  Take that downstairs.

8            (Juror leaves.)

9            THE CLERK:  44.

10            (Next Juror.)

11            THE CLERK:  Can we have your name, sir.

12            THE JUROR:  Michael Hooley.

13            THE COURT:  Yes, Mr. Hooley.

14            THE JUROR:  The question, the topic of child

15    molestation, is, um, I want to say, can be a little bit

16    uncomfortable.

17            THE COURT:  You've answered it, so will I, I'm

18    sure the defense will, as Ms. Paruti, and that's why

19    there's a law about it.  But you recognize that

20    Mr. Levin -- that doesn't mean that Mr. Levin was

21    involved in anything.

22            THE JUROR:  Um-hum.

23            THE COURT:  So my question is, even though you

24    may be uncomfortable with that, do you think you could

25    be fair and impartial in listening to my instructions

1    concerning the case?

2                THE JUROR:  Yes.

3                THE COURT:  Then we'll ask you to stay.  Thank

4    you.

5                THE JUROR:  Okay.

6                (Juror leaves.)

7                THE CLERK:  49.

8                (Next juror.)

9                THE COURT:  Can we have your name, sir?

10               THE JUROR:  Edward J. Perry.

11               THE COURT:  Yes, Mr. Perry.

12               THE JUROR:  Um, I think viewing the material

13   would be, um, would disturb me because when I was around

14   4 years old my mother was seeking a legal separation

15   from my father and she said that, um, he molested me,

16   and I have no real recollection of it ever happening.

17   But maybe seeing those images would bring back some

18   memories or something like that.

19               THE COURT:  All right, we'll excuse you on

20   this case.  Go back downstairs and we'll find you maybe

21   a different type of case.

22               THE JUROR:  Thank you, your Honor.

23               (Juror leaves.)

24               THE CLERK:  22.

25               (Next juror.)

1              THE COURT:  Can we have you name, ma'am.

2              THE JUROR:  Ann McCaffrey.

3              THE COURT:  Yes, Ms. McCaffrey.

4              THE JUROR:  Those depictions or videos, I

5      really don't want to see any of that.

6              THE COURT:  I'm sure the lawyers don't either.

7              THE JUROR:  Exactly.

8              THE COURT:  But you see that's why we have a

9      law against it.  My concern is this, do you recognize

10     that that doesn't mean that Mr. Levin is involved in

11     anything?

12             THE JUROR:  Oh, yes.

13             THE COURT:  So you understand that?

14             THE JUROR:  Yes.

15             THE COURT:  So let me say, I don't know this

16     -- I honestly don't know about this case, I haven't seen

17     any evidence, but we have tried to make this

18     understandable to the jury, so there isn't going to be

19     long videos to watch.  If we get into anything, the

20     lawyers -- they've cooperated on this, they've assured

21     that it would be very brief, um, just to give you an

22     idea what the video is about.  And I've required that.

23             Now my question is, let's say you find it

24     disgusting, you find it appalling, but I have to explain

25     the law because that's what Congress passed.  So can you

1  follow the law even though you personally are disturbed

2  by it?  Do you think you could follow the law?

3          THE JUROR:  I don't know, I'm a very nervous

4  person, and I just --

5          THE COURT:  Well there's no reason to be

6  nervous, trials are very quiet and they just roll on

7  quietly.

8      Do you think you could be fair, fair to the

9  government and fair to Ms. Levin?

10          THE JUROR:  I will try.

11          THE COURT:  All right, we'll ask you to stay.

12  Thank you.

13          THE JUROR:  Okay.

14          (Juror leaves.)

15          THE CLERK:  23.

16          (Next juror.)

17          THE COURT:  Can we have your name, ma'am.

18          THE JUROR:  Amanda Kutia.

19          THE COURT:  Yes, Ms. Kutia.

20          THE JUROR:  A couple reasons.  Primarily I'm

21  the only person in my business and I keep managing it --

22  but it's just so disgusting, it's disturbing, and I

23  don't think I can be impartial.

24          (Cries.)

25          THE COURT:  I'm going to excuse you on this

1    case.  Go back downstairs and we have, as you know, we

2    have other cases.  So we'll send you out on another

3    case.

4                THE CLERK:  Is it Amanda?

5                THE JUROR:  Yes.

6                THE COURT:  You're excused on this case.

7                THE CLERK:  51.

8                (Next juror.)

9                THE COURT:  Can we have your name, ma'am.

10               THE JUROR:  Doreen Baker.

11               THE COURT:  Yes, Ms. Baker.

12               THE JUROR:  You asked a question about showing

13   -- I would be disturbed about some of those pictures.

14               THE COURT:  Well I'm sure you would be, but

15   the way I asked it and what I'm concerned about is that

16   even if you saw these pictures and if there were any

17   pictures, my order is -- and I don't even know, but in a

18   case of this type, let's say there are pictures or

19   videos or something.  So my order is it would only be

20   shown for a brief period just to get an idea of what the

21   video is about.

22       Can you do -- even though you may find that

23   disgusting, can you follow my instructions as to the law

24   because that will explain exactly what Congress has

25   prohibited here, or are you just going to be so

1   disgusted that that will be an end of it and just say

2   he's guilty?

3              THE JUROR:  Probably.

4              THE COURT:  Probably you will?  All right.

5   Then we're going to excuse you from this case.  Go

6   downstairs, we'll find a different case for you.  Thank

7   you very much.

8              (Juror leaves.)

9              THE CLERK:  61.

10             (Next juror.)

11             THE COURT:  May I have your name, please,

12  ma'am.

13             THE JUROR:  Yes, Luciana Vise.

14             THE COURT:  Yes, Ms. Vise, you answered "Yes"

15  to something?

16             THE JUROR:  Yes.  So I live with my boyfriend,

17  who is a police officer, so I think I would be biased

18  towards the police officer's judgment, because I just

19  trust police officers usually.

20             THE COURT:  And you trust your boyfriend and I

21  surely can understand that.

22             THE JUROR:  Yes.

23             THE COURT:  But does that transfer to police

24  officers generally?  I mean when they get on the stand

25  and say "I'm an agent of the FBI," or "I'm a Boston

1   Police Officer," you're just sort of going along with

2   them just because that's their job?

3              THE JUROR:  Yes, I trust their judgment and

4   whatever.

5              THE COURT:  All right, you did just right.

6   Very well, just go downstairs, tell them no criminal

7   cases, but you can go out on a civil case.  We'll find a

8   different case for you.

9              THE JUROR:  Thank you.

10              (Juror leaves.)

11              THE CLERK:  54.

12              (Next juror.)

13              THE COURT:  Hi, ma'am.

14              THE JUROR:  My name?

15              THE COURT:  Yes, start with your name.

16              THE JUROR:  Judith Giangrande.

17              THE COURT:  Yes, Ms. Giangrande.

18              THE JUROR:  So the question was the -- I think

19   the question was dealing with the pictures of the kids.

20              THE COURT:  All right.

21              THE JUROR:  Okay.  I disagree with pornography

22   right off the bat.  I don't know -- and in viewing the

23   kids --

24              THE COURT:  You're doing just right, and your

25   answer -- whatever your answer is, it would be just

```
 1    right.  I understand what you're saying.  But that of
 2    course is why Congress passed laws forbidding anyone
 3    from possessing child pornography.
 4              THE JUROR:  Yes.
 5              THE COURT:  So I don't know that there will be
 6    pictures in this case, but I've tried cases like this
 7    before and there may be.  So if there is, they'll be
 8    shown very briefly just to get an idea of what it is
 9    they actually depict.
10         You recognize that even if somehow there are
11    pictures and they come into evidence, standing alone
12    that cannot mean that Mr. Levin possessed it?
13              THE JUROR:  Oh, absolutely, your Honor.
14              THE COURT:  All right.
15         And the government has to prove it beyond a
16    reasonable doubt, and now I'm getting to the nub of it.
17    When Congress passes a law, they pass definitions, and
18    I'll teach you the definitions, but in order to be
19    guilty of the crime, the evidence would have to fit the
20    definition.  So just seeing something that you think --
21    and I'm using general words, advisory terms, that
22    something is "gross" or "disgusting," it doesn't mean it
23    fits the definition.
24         So do you think you can follow my definitions even
25    if you're turned off by the evidence?
```

```
 1              THE JUROR:  Um, I think I could.  Let me just
 2     say that pornography, even adults do it, and whatever, I
 3     disagree with it.  So I just don't know if that would be
 4     me being able to be a fair.  I mean if -- because that's
 5     part of my opinion.
 6              THE COURT:  Of course, and you're entitled to
 7     your opinion.
 8              THE JUROR:  So that's where I'm at, and I
 9     don't know if --
10              THE COURT:  But you see you're right to
11     mention adult pornography, because our First Amendment,
12     while there are some laws, by and large there's a lot of
13     adult pornography and, um, the law has very little to
14     say about it.  The law forbids child abuse, um, a
15     depiction of an actual child being abused in a sexual
16     fashion -- and it has to be an actual child for that to
17     be evidence of child abuse and the law forbids that.
18     And I can't be more precise, and I will, but you
19     understand what we're talking about here?
20              THE JUROR:  Yes.
21              THE COURT:  But in order to have a fair trial,
22     I'm going to need jurors who believe that they can weigh
23     the evidence, hold the government to its burdon of proof
24     beyond a reasonable doubt, and fairly start Mr. Levin
25     off innocent, because of these constitutional
```

```
1    principles?

2              THE JUROR:  Right.

3              THE COURT:  Do you think you can do that?

4              THE JUROR:  I'm not sure.  Honestly, I'm not

5    sure.

6              THE COURT:  Well that's why I'm asking.  So

7    I'm going to excuse you on this case.  Go back

8    downstairs and we'll find a different case for you.

9              THE JUROR:  Thank you.

10             THE COURT:  Thank you very much.

11             (Juror leaves.)

12             THE CLERK:  37.

13             (Next juror.)

14             THE COURT:  Can we have your name, sir.

15             THE JUROR:  John Nguyen.

16             THE COURT:  Mr. Nguyen, you answered "Yes"?

17             THE JUROR:  Yes, I answered "Yes" to a friend

18   who --

19             THE COURT:  Yes?

20             THE JUROR:  The question offended to me -- to

21   everything.  There was a picture.

22             THE COURT:  You would find that offensive?

23             THE JUROR:  Yes.

24             THE COURT:  Well most people would find it

25   offensive.  But I ask it because of the follow-up
```

1    question.

2          Can you follow my instructions as to the law about

3    how to evaluate such evidence even if you find it

4    offensive?

5                THE JUROR:  Yeah, but I think what happens is

6    I have a 17-year-old daughter and every day I protect

7    her and I don't want to see those pictures, and I don't

8    want it to happen to her too.

9                THE COURT:  No, I'm sure you don't.  But --

10               THE JUROR:  Yeah.

11               THE COURT:  But for one thing, we're talking

12   about, if any evidence is, it's much younger children,

13   but, two, if in fact the pictures are accurate, um, do

14   you think you -- that once I explain the law to you, do

15   you think you could follow that law and be fair to

16   Mr. Levin?

17               THE JUROR:  Probably not.  I think I would

18   make up my mind and be biased to that.

19               THE COURT:  All right.  You're excused from

20   this case, go back downstairs and we'll find a different

21   case for you.

22               THE JUROR:  Okay, thank you.

23               (Juror leaves.)

24               THE CLERK:  28.

25               (Next juror.)

```
 1                THE COURT:  Can we have your name, ma'am.

 2                THE JUROR:  Nancy St. Pierre.

 3                THE COURT:  Yes, Ms. St. Pierre.

 4                THE JUROR:  I work in the New Bedford School

 5     System and for 32 years I've worked with my SPED

 6     children and for 32 years I've watched every kind of

 7     abuse that you can possibly imagine, and some of it has

 8     been pornography on my children.  I just can't be

 9     impartial.  I --

10                THE COURT:  Well let me -- you're absolutely

11     entitled to your views and I thank you for coming up.

12                THE JUROR:  Thank you.

13                THE COURT:  But you recognize that doesn't

14     mean that Mr. Levin is involved in anything.

15                THE JUROR:  I understand that completely, I

16     really do, but I just can't get past the fact that it

17     happens, and I've had to see it for 32 years and I'm

18     still involved in it.  I just --

19                THE COURT:  I mean being honest, you're going

20     to hold that against him here?

21                THE JUROR:  I don't want to.  I really don't.

22     I have nothing against him.  I don't even know him.  But

23     I know that I've seen it too much and I just can't get

24     past the fact that this happens, um, whether he did it

25     or not.
```

```
 1                THE COURT:  Well I mean under the law, at
 2      least at this stage, we know he didn't do it.
 3                THE JUROR:  Absolutely.
 4                THE COURT:  And it's up to the government to
 5      prove that he did.
 6           You can follow that, can't you?
 7                THE JUROR:  I can't be impartial.  I can't,
 8      because it's in my head all the time.
 9                THE COURT:  All right, we'll send you back
10      downstairs and we'll find a different type of case for
11      you.
12                THE JUROR:  I do apologize.
13                THE COURT:  There's no apology necessary.  We
14      require a fair and impartial jury system.  This is just
15      what we want.  I pressed you on it.
16                THE JUROR:  Thank you very much.
17                (Juror leaves.)
18                THE CLERK:  40.
19                (Next juror.)
20                THE COURT:  Can we have your name, sir.
21                THE JUROR:  Good morning.  Russell Ruthen.
22           Yes, two issues.  First, my wife is a physician
23      and she served as a, um, expert witness in malpractice
24      suits, and I don't know if it's relevant or not.
25                THE COURT:  Well you've told us and that's
```

1    good.

2                    THE JUROR:  And the second issue is, um, I'm a

3    physics teacher and my students have a final next week

4    and I'm preparing them for that final.  So timing is not

5    awesome.

6                    THE COURT:  It's not, but I need people from

7    all walks of life, so let's see how it works out.  So

8    we'll ask you to stay.  Thank you very much.

9                    (Juror leaves.)

10                   THE CLERK:  29.

11                   (Next juror.)

12                   THE COURT:  Can we have your name, sir.

13                   THE JUROR:  Daniel Hanlon.

14                   THE COURT:  Yes, Mr. Hanlon.

15                   THE JUROR:  I have extreme biases.  I've been

16   a school teacher for 32 years and a camp director for 32

17   years.  I'm presently working in the Lowell Public

18   Schools as a social studies teacher.  I don't see how I

19   could see evidence of this -- if I ever saw any of these

20   people, absolutely --

21                   THE COURT:  Well you're a social studies

22   teacher so you know that we're not saying Mr. Levin is

23   guilty, you understand he really is innocent, and we

24   don't know who Mr. Levin is, and it will be up to the

25   government to prove it beyond a reasonable doubt.

1          You're telling me you've made up your mind that

2  he's guilty?

3          THE JUROR:  I just -- what I do every single

4  day is to try to protect children, and especially with

5  daycare, little children, and that's, um --

6          THE COURT:  Well, believe me, I honor that.

7  At the same time he's entitled to the fair trial.

8          THE JUROR:  Uh-huh.

9          THE COURT:  But you're telling me you can't

10  give him a fair trial, is that correct?

11          THE JUROR:  I just don't think I can under the

12  circumstances.

13          THE COURT:  All right, you're excused in this

14  case, go back downstairs and we'll find a different case

15  for you.

16          THE JUROR:  Thank you.

17          (Juror leaves.)

18          THE CLERK:  56.

19          (Next juror.)

20          THE COURT:  Can we have your name, sir.

21          THE JUROR:  My name is Wei Li.

22          THE COURT:  Yes, Mr. Lei.

23          THE JUROR:  I'm a restaurant owner and I'm the

24  chef, so if I'm here I have to close down the

25  restaurant.  So I'm wondering if I could get excused

```
1    from this?
2              THE COURT:  Well do you take vacation at any
3    time, ever?
4              THE JUROR:  I have another chef working, but
5    he's on vacation this week, so I'm working around it.
6              THE COURT:  Okay.  As cases go, this is a
7    short case, and if you stay with us, I will keep you
8    only a half a day each day.  It's only going to be four
9    or five days at the outside.  And you'll have to stay
10   all day when you deliberate, when you decide the
11   verdict.  But if you defer you, in other words if I say
12   "Okay, you can leave," we'll call you back in a year,
13   and we'll only defer you once, so when we call you back
14   to do it, it could be a much longer case and then the
15   judge won't defer you.
16        So do you want to take a chance on this case and
17   get it over with?
18              THE JUROR:  Um, the thing is I can't because
19   my chef is on vacation right now and otherwise I'm here.
20              THE COURT:  Okay, let me ask you this.  What
21   would be the best time for you to come so the chef
22   wouldn't be on vacation?
23              THE JUROR:  Um, after this week.
24              THE COURT:  Any time but this week?
25              THE JUROR:  Yeah, because he just went on
```

```
1    vacation last Saturday.  So I apologize.

2                THE COURT:  You don't have to apologize.

3    We'll try to accommodate you.  He's deferred.  You're

4    deferred, we will call you back, not this week, but when

5    you come back you're going to have to serve no matter

6    how long it is.

7         Do you understand?

8                THE JUROR:  Uh-huh.

9                THE COURT:  All right, you're deferred.  Take

10   this downstairs and you're free to go.

11               (Juror leaves.)

12               THE CLERK:  Number 50.

13               (Next juror.)

14               THE COURT:  Can we have your name, sir.

15               THE JUROR:  Phillip Temples.

16               THE COURT:  Yes, Mr. Temples.

17               THE JUROR:  While I think I could be a fair

18   and impartial juror, I need to say that my wife of 40

19   years, when she was a child she was a victim of a child

20   sex-trafficking ring in Acron, Ohio.

21               THE COURT:  I'm very sorry, and you did just

22   right to tell us.  But you're telling me you don't know

23   Mr. Levin and the person accused here and so you think

24   you could be fair and impartial?

25               THE JUROR:  I think so.
```

```
 1              THE COURT:  Then we'll ask you to stay.  Thank
 2    you.
 3              (Juror leaves.)
 4              THE CLERK:  Number 8.
 5              (Next juror.)
 6              THE COURT:  Can you tell us your name, ma'am?
 7              THE JUROR:  Mary Smith.
 8              THE COURT:  You answered "Yes"?
 9              THE JUROR:  To the question about the
10    pictures.
11              THE COURT:  Most people have come up on that.
12              THE JUROR:  I'm sure.
13              THE COURT:  And I'm looking for the best way
14    to explain it, I always ask that question in a case of
15    this sort.  The truth is I don't know if there's going
16    to be any pictures, but we'll assume there are, and
17    we'll assume that my description is roughly accurate,
18    graphic and with a sexual nature of children.
19              THE JUROR:  Right.
20              THE COURT:  Most people find that disgusting.
21              THE JUROR:  Of course.  Right.
22              THE COURT:  Of course that's why Congress
23    passed the law, that's why this type of crime is
24    prosecuted.
25         So let's start -- do you recognize that that
```

1   doesn't mean that Mr. Levin or the person who is here is

2   involved with anything like this?

3        Do you agree with that?

4            THE JUROR:  Yes, I do.

5            THE COURT:  When Congress passes a law, they

6   pass definitions, and in this case we'll be concerned

7   with a certain child below a certain age, that type of

8   thing, but there's other definitions and I have to teach

9   it to the jury.  So I'll put the difficult question to

10  you.

11       If there are a video or pictures or something of a

12  child, and we only have to review it for a short period

13  of time to get an idea what it is, but it's gross, it's

14  disgusting.

15           THE JUROR:  Uh-huh.

16           THE COURT:  But let's say you have a

17  reasonable doubt of where it fits the definition.  Are

18  you going to be so turned off by the picture -- and then

19  we're not saying he has anything to do with it, but that

20  you'll just throw that out the window, react to the

21  shock value of the picture, and not be able to follow my

22  instructions and say "Did he do it?"  That's the hard

23  question.

24           THE JUROR:  And that's the part that I'm not

25  sure of.  I see a lot of disturbances at work and that

1    is disturbing.

2              THE COURT:  May I ask you, what's your

3    profession?

4              THE JUROR:  I'm a registered nurse.

5              THE COURT:  Oh, yes, I'm sure you do.  Well

6    that's the best way I can ask the question.  And

7    honestly I'm truly looking for an honest answer because

8    he deserves and the government deserves a fair and

9    impartial trial.

10             THE JUROR:  Absolutely.

11             THE COURT:  Congress does the best it can to

12   pass something definitive -- I mean the statute is no

13   good if it just says "gross and disgusting and it

14   involves children, it's forbidden," that's no statute,

15   it's more definitive than that.  And I'll be very

16   careful, I'll explain it, and the government will try to

17   prove it and the defense will point out what problems

18   there are with it, and it will be up to the jury.

19        Do you think you could be fair and impartial in

20   that?

21             THE JUROR:  I think I can do my best, I mean.

22             THE COURT:  Then I'll ask you to stay.  Thank

23   you.

24             THE CLERK:  39.

25             (Juror leaves.)

```
 1            (Next juror.)

 2            THE COURT:  Can we have your name, sir.

 3            THE JUROR:  Saitahmet Binselem.

 4        I have an experience in the past with regard to my

 5   close friend, college friend, that I thought you should

 6   know.  She was raped in a college party and she suffered

 7   and committed suicide and I think you should know the

 8   circumstances of that.

 9            THE COURT:  And you did just right to tell us

10   that, but that has nothing to do with -- and you

11   recognize it has nothing to do with this case?

12            THE JUROR:  Oh, correct.

13            THE COURT:  And you don't know Mr. Levin?

14            THE JUROR:  I do not.

15            THE COURT:  Do you think -- and this was a

16   friend of yours and I'm sure it touches you deeply, but

17   do you think you can be fair and impartial in this case,

18   fair to the government, but equally fair to Mr. Levin?

19            THE JUROR:  I have some feelings about this

20   issue, I can attempt, but, um, I don't know.  Involving

21   the children, the nature of it, it's hard to --

22            THE COURT:  The nature of what?

23            THE JUROR:  The children, the sexual --

24            THE COURT:  And that's why possession of such

25   data is forbidden under our law.
```

1           THE JUROR:  I see.  I cannot say.  But my

2     feelings are --

3           THE COURT:  We'll ask you to stay.  Thank you.

4           THE CLERK:  Sir, your name one more time?

5           THE JUROR:  Saitahmet Binselem.

6           THE CLERK:  Thank you.

7        Number 25.

8           (Juror leaves.)

9           (Next juror.)

10           THE COURT:  Can we have your name, sir?

11           THE JUROR:  William Moyer.

12           THE COURT:  Yes, Mr. Moyer.

13           THE JUROR:  I don't know if this is relevant,

14     but I did a three-day state jury trial in March, and

15     everything I miss here I wind up making up on nights and

16     weekends, um, at work.

17           THE COURT:  The answer is that doesn't excuse

18     you because we're different.  You said you served in the

19     state, but that doesn't excuse you.

20           THE JUROR:  Oh, okay.

21           THE COURT:  The state is a wonderful system

22     and when you serve, they give you only a three-year

23     period.  But here there are no computers, you're a

24     United States citizen, and you --

25           THE JUROR:  Oh, yes, I appreciate that.  I

1    understand.

2            THE COURT:  So here you are.  And this is a

3    relatively short case and I'll ask you to stay.

4            (Juror leaves.)

5            THE CLERK:  31.

6

7            (In open court.)

8            THE COURT:  I find this panel indifferent.

9    Proceed, Madam Clerk.

10           THE CLERK:  Juror Number 1, Victor Beletsky,

11   please take Seat 1 in the back row.

12           (Takes seat in box.)

13           THE CLERK:  Juror Number 3, Marjorie Berger,

14   please come forward, take Seat 2 in the back row.  Juror

15   Number 5, Gregory Bokar, please come forward, take Seat

16   3 in the back row.  Juror Number 7, Ekaterina Gianiotis,

17   please come forward, take Seat 4 in the back row.  Juror

18   Number 8, Phillip Temples, please come forward, take

19   Seat 5 in the back row.  Juror Number 9, Aziz Gilani,

20   please come forward, take Seat 6 in the back row.  Juror

21   Number 10, Jane McNamee, please come forward, take Seat

22   7 in the back row.

23           (First row filled.)

24           THE CLERK:  Juror Number 11, Melissa

25   Centrella, please come forward, take Seat 1 in the front

row.  Juror Number 12, Mark Marlborough, please come
forward, take Seat 2 in the front row.  Juror Number 14,
Christine Campo, please come forward, take Seat 3 in the
front row.  Juror Number 15, Barbara Smail, please come
forward, take Seat 4 in the front row.  Juror Number 17,
Benjamin Browne, please come forward, take Seat 5 in the
front row.  Juror Number 20, Ilana Steel, please come
forward, take Seat 6 in the front row.  Juror Number 21,
David Taglieri, please come forward, take Seat 7 in the
front row.

(Box is filled.)

THE COURT:  Now as I explained, ladies and
gentlemen, I'm going to call each one of you in the
order that you were called into the jury box.  You don't
have to introduce yourself, except I didn't catch all
these names, and that's my fault.  So if I just say the
next juror, would you again just recite your name.  And
then, in just a very few words, would you tell us where
you work, what you do there, and if you are married,
would you tell us where your spouse works and what he or
she does.

I didn't catch the first one?

THE JUROR:  Victor Beletsky.

THE COURT:  Yes, Mr. Beletsky.

THE JUROR:  So I do work in a business

```
 1    overseas and my wife is a stay-at-home mother.

 2              THE COURT:  In a business overseas.  What's

 3    the business overseas?

 4              THE JUROR:  A telecommunications company.

 5              THE COURT:  Thank you.

 6          Ms. -- Ma'am?

 7              THE JUROR:  Yes.  Marjorie Berger.

 8              THE COURT:  Yes, Ms. Berger.

 9              THE JUROR:  I'm retired.

10              THE COURT:  And when you worked?

11              THE JUROR:  Cambridge Public Schools.

12              THE COURT:  And what did you do there?

13              THE JUROR:  I was the director of library

14    services.

15              THE COURT:  Thank you.

16          And, sir, I didn't catch your name?  Forgive me.

17              THE JUROR:  Gregory Bokar.

18              THE COURT:  Yes?

19              THE JUROR:  I work at Sunovion

20    Pharmaceuticals, I am General Counsel and Corporate

21    secretary.  My wife does not work.

22              THE COURT:  Thank you.

23          Ms. Gianotis.

24              THE JUROR:  I work at White & Case, LLP,

25    downtown.  It's a law firm.  I manage an IT practice for
```

1     a partner and I'm also a member of the bar to practice

2     law in Massachusetts.  I am married, my husband is a

3     construction worker, and I have one child.

4              THE COURT:  Thank you.

5         Mr. Temples.

6              THE JUROR:  Good morning.  I work as a

7     computer systems administrator at Boston College, and

8     I'm married, and my wife is a self-employed

9     entrepreneurial scientist.

10             THE COURT:  Mr. Gilani.

11             THE JUROR:  Aziz Gilani.  I'm a former

12    software engineer and now I'm financially independent.

13    I'm married, my wife is a stay-at-home mom.

14             THE COURT:  Thank you.

15        Ms. McNamee.

16             THE JUROR:  Jane McNamee, I work at Newton

17    Wellesley Hospital, I'm a cardiac registered nurse.

18             THE COURT:  Okay.

19        Ms. um -- I'm sorry, my --

20             THE JUROR:  That's okay, my name is Melissa

21    Centrella.

22             THE COURT:  Centrella.  Thank you, ma'am.

23             THE JUROR:  I'm a marketing director at a

24    company called Monotype in Woburn.

25             THE COURT:  Thank you.

1          Mr. Marlborough.

2               THE JUROR:  Yeah, I work for T3XY, I set up

3     trade shows, and I'm married with two children.  And my

4     wife works in Human Resources.

5               THE COURT:  Thank you.

6          Ms. Campo.

7               THE JUROR:  Christine Campo, I'm retired, I

8     formerly worked for the State of Washington, the

9     Department of Health, an office administrator.

10              THE COURT:  Thank you.

11         Ms. Smail.

12              THE JUROR:  I'm Barbara Smail.  I work at 128

13    Plumbing & Heating, Inc., as an accounting assistant.

14    I'm married and my husband works as an electrician.  And

15    we have three kids.

16              THE COURT:  Thank you.

17         Mr. Browne.

18              THE JUROR:  I'm Benjamin Browne.  I'm a full-

19    time college student at Bowdoin College.

20              THE COURT:  And could I ask what you're

21    majoring in?

22              THE JUROR:  In sociology and Spanish studies.

23              THE COURT:  Thank you.

24         Ms. Steel.

25              THE JUROR:  I am a stay-at-home mom now and my

```
 1    husband works for a software company.

 2              THE COURT:  Thank you.

 3         And Mr. Taglieri.

 4              THE JUROR:  I'm a presales engineer for IKEA

 5    Solutions as well for a company called TTEC, and I'm

 6    married.

 7              THE COURT:  And your wife?

 8              THE JUROR:  She works at Mass. General

 9    Hospital as an X-ray tech.

10              THE COURT:  Thank you.

11         Counsel.

12              MR. CARNEY:  Your Honor, could we just have a

13    moment?

14              THE COURT:  Yes, a moment.

15              (Pause.)

16

17              AT THE SIDEBAR

18              THE COURT:  Counsel?  The government first.

19    No backstrikes.

20              MS. PARUTI:  Juror Number 5.

21              THE COURT:  The name?

22              MS. PARUTI:  Gregory Bokar.  Mr. Bokar.

23              THE COURT:  He's the lawyer?

24              MS. PARUTI:  Correct.

25              THE COURT:  And is he sitting --
```

```
1              MS. PARUTI:  He's seated in Seat 3.
2              THE COURT:  Yes, Seat 3.  He's excused.
3         Otherwise content?
4              MS. PARUTI:  Actually, um, Ekaterina
5    Gianiotis, Number 7.
6              THE COURT:  And where is she sitting?
7              MS. PARUTI:  4.
8              THE COURT:  Seated next to him.  She's
9    excused.
10             MS. PARUTI:  And then, um, Benjamin Browne,
11   Juror 17.
12             THE COURT:  He's the student?
13             MS. PARUTI:  Yes.
14             THE COURT:  He's excused.
15        You're otherwise content?
16             MS. PARUTI:  Otherwise content.
17             THE COURT:  Mr. Carney.
18             MR. CARNEY:  Your Honor, we challenge Juror
19   Number 8 in Seat 5.
20             THE COURT:  That's Campo.  He's excused.
21             Yes?
22             MR. CARNEY:  Juror 9 in Seat 6.
23             THE COURT:  He's from India.  Why are you
24   challenging him?
25             MR. CARNEY:  (Silence.)
```

```
 1              THE COURT:  He's retired, a software engineer,
 2    and appears to have done very well.
 3              MR. CARNEY:  Yeah, I don't want a software
 4    engineer on this case.
 5              THE COURT:  There are no software engineers on
 6    this case then?
 7              MR. CARNEY:  Yes.
 8              THE COURT:  Okay, he's excused.
 9        Any more?
10              MR. CARNEY:  Seat Number 21 -- I mean Juror 21
11    in Seat 14.
12              THE COURT:  The name?
13              MR. CARNEY:  David Taglieri.
14              THE COURT:  Yes, okay, he's excused.
15        You're otherwise content?
16              MR. CARNEY:  Yes, your Honor.
17              THE COURT:  Very well.  Those jurors are
18    excused.
19
20              (In open court.)
21              THE CLERK:  The following jurors, please come
22    forward, you've been excused from this case.  Juror
23    Number 5, Gregory Bokar.  Juror 7, Gianiotis.  Juror 8,
24    Philip Temples.  Juror 9, Aziz Gilani.  Juror 17,
25    Benjamin Browne.  And Juror 21, David Taglieri.
```

```
 1                 (Jurors leave box.)
 2                 THE CLERK:  Juror Number 23, Anne McCaffrey,
 3      please come forward, take Seat 3 in the back row.  Juror
 4      Number 25, Saitahmet Binselem, please come forward, take
 5      Seat 4 in the back row.
 6                 (Take seats.)
 7                 THE CLERK:  Juror Number 27, Wei Lien, please
 8      come forward, take Seat 5 in the back row.  (Takes
 9      seat.)  Juror Number 29, Russell Ruthen, please come
10      forward, take Seat 6 in the back row.  Juror Number 30,
11      John Mackenzie, please come forward, take Seat 5 in the
12      front row.  Juror Number 31, William Moyer, please come
13      forward, take Seat 7 in the front row.
14                 (Box is filled.)
15                 THE COURT:  And now I'm going to ask the same
16      question of the jurors who just joined us, and we'll
17      start with Ms. McCaffrey.
18                 THE JUROR:  I'm Anne McCaffrey, I work at
19      Dowling Insurance in Braintree.  I'm not married.  No
20      kids.
21                 THE COURT:  Thank you.
22            Mr. Binselam.
23                 THE JUROR:  I work as a --
24                 THE COURT:  You work as a --
25                 THE JUROR:  A research scientist at a company
```

```
 1   called FM Global.  I'm married.  My wife is working as a
 2   contractor at the moment.
 3              THE COURT:  All right.
 4        Do you mind giving us the general area of your
 5   research, sir?
 6              THE JUROR:  I do postal structures, modeling,
 7   and monitoring national hazards.
 8              THE COURT:  Thank you.
 9              THE JUROR:  Natural hazard studies like --
10              THE COURT:  No, I got that.
11        And I may not have your name right, the next one?
12              THE JUROR:  Wei Lien.
13              THE COURT:  Oh, yes.
14              THE JUROR:  A primary care physician at Mass.
15   General in Boston.
16              THE COURT:  Thank you.
17        Mr. Ruthen.
18              THE JUROR:  I'm Russell Ruthen and I'm a
19   physics teacher at Worcester Academy, my wife is a
20   gastroenterologist at Lowell General Hospital, and I
21   have three sons.
22              THE COURT:  Thank you.
23        And let's see here.  Um, Mr. Mackenzie?  Oh, no,
24   I'm sorry, it's Mr. Browne.  Yes, sir, the new juror who
25   just joined us.
```

```
 1                 THE CLERK:  It's McKenzie.
 2                 THE COURT:  Oh, yes, it is McKenzie.  I have
 3       him.  I mixed up as to your seat, sir.  My fault.
 4       Mr. McKenzie.
 5                 THE JUROR:  I'm an electrician for Boston
 6       Electric and Telephone, um, and my wife is a scientist
 7       for H3 Environmental.
 8                 THE COURT:  Thank you.
 9            And, Mr. Moyer.
10                 THE JUROR:  I'm an electrical engineer for
11       Intel, my wife and three kids -- my wife mostly stays
12       home, but she's a software analyst.
13                 THE COURT:  Thank you.
14            All right, counsel.
15
16                 AT THE SIDEBAR
17                 THE COURT:  This time it's the defense first.
18                 MR. CARNEY:  Juror Number 25 in Seat 4.
19                 THE COURT:  That's Mr. Binselam.
20                 MR. CARNEY:  Um --
21                 THE COURT:  The research scientist?
22                 MR. CARNEY:  Yes, your Honor.
23                 THE COURT:  He's excused.
24            Any more?
25                 MR. CARNEY:  Number 27 in Seat 5.
```

1              THE COURT:  That's Mr. Wei Lien.  Mr. Lien is

2     a pediatrician, he appears to be a Chinese American

3     here, why are you challenging him?

4              MR. CARNEY:  I don't want any doctors on this

5     jury.

6              THE COURT:  I don't understand.  Why?  I mean

7     I could see a software engineer, but I don't understand

8     a doctor.  Why?

9              MR. CARNEY:  I don't feel that it benefits the

10    defendant to have a highly-skilled medical professional

11    on the jury.

12             THE COURT:  I have to tell you, I question

13    that -- but I'm going to excuse him.  All right.

14          Anyone else?

15             MR. CARNEY:  Number 29 in Seat 6.

16             THE COURT:  That's Mr. Ruthen.  Yes, he's

17    excused.

18             MR. CARNEY:  And Number 31 in Seat 14.

19             THE COURT:  That's Mr. Moyer?

20             MR. CARNEY:  Right.

21             THE COURT:  He's excused.

22          You've used up 7 challenges.

23             MR. CARNEY:  Oh, excuse me.  I have one more.

24    Um --

25             (Pause.)

```
 1                    MR. CARNEY:  And, um, Juror Number 23 in Seat
 2     3.
 3                    THE COURT:  Ms. McCaffrey?
 4                    MR. CARNEY:  Yes, your Honor.
 5                    THE COURT:  She's excused.
 6                    MR. CARNEY:  And that all I have, your Honor.
 7                    THE COURT:  We have two people who are new to
 8     the jury, do you challenge any of them?
 9                    MS. PARUTI:  They are?
10                    THE COURT:  They are McKenzie and -- and I
11     guess she's the only one.
12                    MS. PARUTI:  It's John McKenzie?
13                    THE COURT:  Yes, he's the only one.
14          Are you challenging him?
15                    MS. PARUTI:  No.
16                    THE COURT:  All right.  Very well.
17
18                    (In open court.)
19                    THE CLERK:  Will the following jurors please
20     come forward, you've been excused from the case.
21          Juror Number 23, Anne McCaffrey.  Juror Number 25,
22     Saitahmet Binselam.  Juror Number 27, Wei Lien.  Juror
23     Number 29, Russell Ruthen.  And Juror Number 31, William
24     Moyer.
25                    (Jurors leave box.)
```

1            THE CLERK:  Juror Number 32, Regina O'Neill,

2     please come forward, take Seat 3 in the back row.  Juror

3     Number 35, Charles Morrison, please come forward, take

4     Seat 4 in the back row.  Juror Number 36, Lisa Fox,

5     please come forward, take Seat 5 in the back row.  Juror

6     Number 38, Darja Nevits, please come forward, take Seat

7     6 in the back row.  Juror Number 39, Mary Smith, please

8     come forward, take Seat 7 in the front row.

9            (Box is filled.)

10            THE COURT:  And the same question for the

11     folks who have just joined us, starting with

12     Ms. O'Neill.

13            THE JUROR:  I'm a chemistry high school

14     teacher and my husband is an engineer.

15            THE COURT:  Thank you.

16        Mr. Morrison.

17            THE JUROR:  Inside sales for Wilsonart

18     International and I'm single.

19            THE COURT:  Inside sales of what?

20            THE JUROR:  Countertop laminates.

21            THE COURT:  Thank you.

22        Ms. Fox.

23            THE JUROR:  I'm a principal scientist, um, at

24     Corning Life Sciences, and my husband is working for an

25     automotive parts supplier.

```
1              THE COURT:  Thank you.
2         Ms. Nevits.
3              THE JUROR:  I'm a retired attorney and my
4    husband is a program manager.
5              THE COURT:  Thank you.
6         And, Ms. Smith.
7              THE JUROR:  I'm a registered nurse at Tufts
8    Medical Center and my husband is an engineer at General
9    Dynamics.
10             THE COURT:  Thank you.
11        Counsel?
12             MR. CARNEY:  May I have just a moment, your
13   Honor, please.
14             (Pause.)
15
16             AT THE SIDEBAR
17             THE COURT:  Ms. Paruti, challenge anyone?
18             MS. PARUTI:  (Pause.)  Juror 38, Ms. Nevits.
19             THE COURT:  She's excused.
20             MS. PARUTI:  (Pause.)  And I'm content.
21             THE COURT:  The defense?
22             MR. CARNEY:  May we have a moment to confer,
23   your Honor?
24             THE COURT:  Very brief, but, yes.
25             (Pause.)
```

```
 1              MR. CARNEY:  The defense challenges Juror 32
 2    in Seat 3.
 3              THE COURT:  That's Ms. O'Neill.  She's
 4    excused.
 5              MR. CARNEY:  Juror Number 36 in Seat 5.
 6              THE COURT:  That's Ms. Fox, she's excused.
 7              MR. CARNEY:  Juror Number 39 in Seat 14.
 8              THE COURT:  And if I calculated correct,
 9    you're out of challenges, just so we're clear.  That's
10    11.
11              MR. CARNEY:  May I just check, your Honor?
12              (Counts.)
13              THE COURT:  Yes, the Clerk agrees with me.
14         And which juror is he challenging?
15              THE CLERK:  Smith.
16              THE COURT:  Smith.  Okay.
17              (Pause.)
18              THE COURT:  Okay.
19              MR. CARNEY:  Would you just review the jurors
20    which I've challenged, your Honor?
21              THE COURT:  Oh, the one you've challenged?
22    You've challenged Smith, Fox -- you've challenged
23    Nevits.  And you've challenged O'Neill.
24              MR. CARNEY:  Okay.
25              (Pause.)
```

1          MR. CARNEY:  All right, your Honor.  Thank

2    you.  Very well.

3

4          (In open court.)

5          THE CLERK:  Will the following jurors come

6    forward, you've been excused.  Juror Number 32, Eugene

7    O'Neill.  Juror Number 36, Lisa Fox.  Juror 38, Darja

8    Nevits.  And Juror Number 31, Mary Smith.

9          (Jurors leave box.)

10          THE CLERK:  Juror Number 42, Gregory

11    Titterington, please come forward, take Seat 3 in the

12    back row.  Juror Number 45, Rawchayla Sahadeo, please

13    come forward, take Seat 5 in the back row.  Juror Number

14    46, Arianna Gynan, please come forward, take Seat 6 in

15    the back row.  Juror Number 47, Lorraine Pollard, please

16    come forward, take Seat 7 in the front row.

17          (Box is filled.)

18          THE COURT:  And the same question for the

19    folks who just joined us, starting with

20    Mr. Titterington.

21          THE JUROR:  Greg Titterington, I'm a retired

22    engineer, my wife works in water technology, and I have

23    two daughters.

24          THE COURT:  Thank you.

25          And, um, Ms. Sahadeo.

 1              THE JUROR:  Rawchayla Sahadeo, a teacher in

 2    the Boston Public Schools, my husband works in Boston

 3    Public Schools as well.

 4              THE COURT:  And is he also a teacher, ma'am?

 5              THE JUROR:  Yes, he is.

 6              THE COURT:  Thank you.

 7         And Ms. Gynan.

 8              THE JUROR:  I work at Lawrence General

 9    hospital as a nurse.

10              THE COURT:  Okay.

11         And, Ms. Pollard.

12              (Silence.)

13              THE COURT:  Oh, I mispronounced your name.

14    Forgive me.

15              THE JUROR:  Pollard.

16              THE COURT:  Pollard.

17              THE JUROR:  I work at Milestone Medical

18    Outsourcing and I work in manufacturing in the cleaning

19    room for medical devices.

20              THE COURT:  Thank you.

21         Counsel.

22

23              AT THE SIDEBAR

24              THE COURT:  Ms. Paruti, are you content?

25              MS. PARUTI:  I will strike Juror 47,

```
 1   Ms. Pollard.
 2              THE COURT:  She's excused.
 3              MS. PARUTI:  Otherwise content.
 4              THE COURT:  All right.
 5        So then, um, what's the -- now we're talking about
 6   alternates and Ms. Gynan is Alternate Number 1.  So
 7   we're talking about the second alternate.  All right.
 8
 9              (In open court.)
10              THE CLERK:  Juror Number 47, Lorraine Pollard,
11   please come forward, you've been excused.
12              (Leaves box.)
13              THE CLERK:  Juror Number 49, Michael Hooley,
14   please come forward, take Seat 7 in the front row.
15              (Box is filled.)
16              THE COURT:  And, Mr. Hooley, the same question
17   for you, sir.
18              THE JUROR:  I'm a financial analyst at
19   Plymouth Rock Insurance.
20              THE COURT:  Thank you.
21          Counsel.
22
23              AT THE SIDEBAR
24              THE COURT:  Are you content?
25              MS. PARUTI:  The government is content.
```

```
 1                THE COURT:  Very well, he's Alternate 2.
 2           Now let's look at the time.  You each get 15
 3      minutes for opening.  I won't give them the charge now
 4      that they're going to separate.  And the question is, if
 5      we let them separate for a bit and come back and then
 6      I'll give them the precharge?  So we can do the
 7      precharge tomorrow morning.  And then to your openings.
 8           I don't think we're going to get this to the jury
 9      on Wednesday actually.  And you'd agree with that?
10                MS. PARUTI:  Yes, I think that's probably --
11                THE COURT:  I'm not pressing it, but I've
12      taken it on me, because of this discovery continuance
13      business, so that suits my schedule.  So I think I'll
14      give them sort of a heads-up and I will give them a
15      precharge now, from me, and then you're opening tomorrow
16      morning.
17           Does that suit the government?
18                MS. PARUTI:  Yes, your Honor.
19                THE COURT:  Mr. Carney, is that right, we
20      start tomorrow morning at 10:00.  I have a doctor's
21      appointment at 7:30 till 8:30.
22                MR. CARNEY:  Your Honor, okay.  All right.
23
24                (In open court.)
25                THE COURT:  Ladies and gentlemen, we now have
```

1    the jury, so would you just hold fast for the moment and

2    Ms. Gaudet will give you the cards, and then will you

3    all go back down to the jury lounge and we'll send you

4    out on other juries.

5         I normally sit till 1:00 in the afternoon, but

6    given the break in the time, what we're going to do is

7    I'm going to give you some instructions that I need to

8    give you now and then we'll let you go.  And I can

9    already see that this is going to go over to Wednesday

10   of next week.  So let's be precise about the schedule,

11   because you're entitled to know it.

12        Tomorrow we'll start at 10:00 in the morning,

13   again my responsibility, I've got a doctor's appointment

14   at 7:30.  So we'll run until 1:30 tomorrow.  Wednesday,

15   and all succeeding days, we'll start promptly at 9:00,

16   but we'll stop a little early, at 12:15 or something,

17   rather than 1:00.  Then we will have to go over till

18   next Wednesday, but I expect the case to be in your

19   hands on Wednesday, in a week, that's the 29th or on the

20   30th.  That will give me a chance to take care of this

21   legal issue I've talked about.

22        So it looks like that's the schedule.  I can

23   promise you how long we will sit on each day, but I

24   can't promise you however many days, because in fairness

25   they get the chance to put on all the relevant evidence

1    that they have.

2         So it looks like next week, Thursday, we're

3    probably going to need you for the full working day.  No

4    one's going to be kept into the evening, no one's going

5    to sit on weekends.  But the way it looks -- it may be

6    faster than that, but it looks like that day, we will

7    need you all day.

8         So since I'm going to let you go, it's time now to

9    give you some instructions.

10        Now you have a special role, now you're not in a

11   venire or about to be picked, you are the jury on this

12   case.  So the first thing I must instruct you is you are

13   not to talk about this case with anyone.  Now what do I

14   mean by that?

15        Of course you can talk about the scheduling.  It's

16   inevitable.  I'm going to excuse you.  We have snacks

17   back there and Ms. Gaudet will give you a little

18   orientation and you're welcome to take those snacks,

19   that's why we have them for you, but then you're free

20   until 10:00 tomorrow morning.  So you can go home, you

21   can go to work, whatever you were going to do.

22        And naturally people are going to be interested in

23   what happened when you came down to the courthouse today

24   and it's appropriate for you to say "Yeah, I went, he

25   picked me.  He tells us it's Tuesday and Wednesday of

```
 1    this week, then we get off for Memorial Day, then
 2    Wednesday, Thursday, of next week, no promises, but
 3    that's what he tells us," all of that schedule, feel
 4    free to say that to anyone.
 5         And you know what's going to happen?  Just as sure
 6    as tonight will follow today, whoever you're talking to
 7    will say, "Well, what kind of case is it?  What are you
 8    sitting on?"  And you have to say, "The judge has told
 9    us we may not say anything about the case while it's
10    going on."
11         When it's over, I don't expect there to be
12    anything in the press about this case, but anything is
13    possible.  But when it's over, you have every right to
14    say anything to anyone about this case, but not while
15    it's going on, and that's because you're the judges of
16    the facts in this case.  And the only thing that can
17    influence you is the evidence that we're going to see in
18    these next few days and next week, and when you go out
19    to deliberate, the views of your fellow jurors.  Nothing
20    else.  Because if you say, "Yeah, oh it's this case and
21    it's about this," they're going to tell you what they
22    think about a case like that.  We're not interested in
23    what they think about it, this is not their turn, they
24    weren't selected as jurors in this case.  You were.  You
25    have that constitutional responsibility.  So no talking
```

1    to anyone.

2          Now that also means, don't go on social media and

3    say, "Hey, guess what?  I've just been selected for a

4    jury."  That's talking about the case.  And it's just as

5    bad, it's just as forbidden, because whoever you put out

6    there, you're going to get people coming back at you and

7    saying, "What is it?  And I was on a jury and I think

8    that and that."  We're not interested in any of that.

9    No talking about the case.

10         Second, um, and this is harder to understand, but

11   you'll -- we'll take you out and we'll show you the jury

12   room and they'll be snacks there, and that's where

13   you'll come tomorrow morning and we'll try to start

14   right at 10:00, I need you here by 10:00 and we'll

15   start, and we'll get going and we'll work until 10:30,

16   taking a brief break, and on Wednesday we'll start right

17   at 9:00.  But inevitably because I'll give you breaks

18   during the day, you'll be together among yourselves, and

19   you're not to talk about the case among yourselves while

20   it's going on.

21         Now that's a little more subtle.  And you may say,

22   "Why not, we're the judges of the case, we together have

23   to deliberate about the case?"  And that's true.  But

24   you're not to talk about the case because you're not to

25   start making up your minds about the case until it's

1    over.  Inevitably this case is going to have a break,

2    I'm not sure where, but it's going to have a break, it

3    won't get through until next week, and they'll be some

4    evidence that you'll need to hear or some arguments of

5    the lawyers that you'll need to hear next week.  And

6    you've got to then remember what we heard this week,

7    keep that all in mind, don't emphasize the end of the

8    case, but don't emphasize the beginning of the case.

9         So you're not to talk about it while it's going on

10   because if you do, you're taking a slant on it.  You

11   can't discuss these matters without expressing a view,

12   even if it's just a tentative view.  That's fine when

13   the case is in your hands and you've heard and seen it

14   all, but not until then.

15        Now no one's saying you can't talk.  Ms. Gaudet

16   went in there once -- and you'll see it's a very nice

17   jury room, you have a big conference table, you've got a

18   microwave in there, you've got snacks in there, um, we

19   have magazines and books there, and they're for you.  We

20   try not to waste your time, but if any of those books

21   interest you, or magazines, you can take them as

22   souvenirs.  My wife will bless you if you take some of

23   the books out of there.

24        So she went in and there were all the jurors and

25   they were sitting around this conference table, ready to

1    go, but utterly silent.  No, talk to each other, get to

2    know each other.  This is just what a jury should be,

3    you're from all backgrounds, all walks of life.  It is a

4    communitarian experience.  It is democracy in action.

5    So get to know each other.  Just don't talk about what

6    goes on in this room, not why I'm wearing a robe, not

7    how people look, and certainly not what the evidence is

8    or is not.  Don't discuss what goes on in the courtroom.

9    But anything else, talk among yourselves.

10          Lastly, keep your minds suspended, that's the best

11   phrase I can come up with.  By that I mean tomorrow

12   we're going to start and I'm going to explain the law to

13   you, the lawyers are going to tell you what they hope

14   they can prove and what's wrong with it, if it's strong

15   or weak or something, they'll explain that, and we'll

16   start with the first witness and both sides will get to

17   question the witness and we'll be going on, it will be a

18   trial.  But keep your minds suspended, because the last

19   witness is as important as the first, whether that comes

20   on Wednesday morning or whether that comes a week from

21   Wednesday.  And the first witness that you hear

22   tomorrow, that's as important as that last witness.  So

23   keep your minds suspended.  Don't be making up your

24   mind.

25          Now I've explained all of that.  It's very

```
 1    important.  You are required to follow it.  I try not to
 2    beat it to death, but I do remind you of it each time we
 3    separate.  The tradition in this session of the court,
 4    now that we have a jury, is we all stand up for you,
 5    you're the judges of the facts.  So every time we
 6    recess, I will say to you "Keep your minds suspended, do
 7    not discuss the case either among yourselves, nor with
 8    anyone else."
 9         You may stand in recess until 10:00 tomorrow
10    morning.  We will start promptly at 10:00 tomorrow
11    morning.  The jury may stand in recess.  I'll remain on
12    the bench.
13              THE CLERK:  All rise for the jury.
14              (Jury leaves, 12:30 p.m.)
15              THE COURT:  Please be seated.
16         I'm prepared to recess.  Is there anything we
17    should discuss before recessing?
18              MS. PARUTI:  I'm sorry, your Honor, I just
19    wanted to flag one clarification that I had discussed
20    with Mr. Carney and Mr. Gaudet.  Originally when you had
21    limited the government to the initial cache, I guess, of
22    pornography that had been identified, um, the number is
23    inaccurate.  I think Mr. Carney had mentioned 7 and 1.
24    It actually was 13 files.  Not just 7 at the beginning.
25    There were 7 that were initially referenced in the
```

```
 1    complaint, but that initial portion is actually --
 2              THE COURT:  Is that agreed?
 3              MR. CARNEY:  I'll have to check that out and
 4    get back to you tomorrow morning, your Honor.
 5              THE COURT:  But if they were in fact initially
 6    identified, my order is as to those.
 7         I heard you talking among yourselves about a
 8    stipulation.  I'm not requiring any sort of
 9    stipulations, but I know the stipulation I had about
10    interstate commerce.  But such a stipulation might make
11    it smoother for the jury, especially seeing the issues
12    that arose on impanelment.  But that's entirely up to
13    you.  So we'll start and jeopardy will attach at 10:00
14    tomorrow morning.
15              MS. PARUTI:  Thank you, your Honor.
16              THE COURT:  We'll recess.
17              (Adjourned, 12:30 p.m.)
18
19
20
21
22
23
24
25
```

1              C E R T I F I C A T E

2

3

4        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

5   hereby certify that the forgoing transcript of the

6   record is a true and accurate transcription of my

7   stenographic notes, before Judge William G. Young, on

8   Monday, May 20, 2019, to the best of my skill and

9   ability.

10

11

12

13   /s/ Richard H. Romanow 06-25-20
     _____
14   RICHARD H. ROMANOW  Date

15

16

17

18

19

20

21

22

23

24

25